## GAINES *v*. FUENTES ET AL.

1. In cases where the judicial power of the United States can be applied only because they involve controversies between citizens of different States, it rests with Congress to determine at what time and upon what conditions the power may be invoked, — whether originally in the Federal court, or after suit brought in the State court; and, in the latter case, at what stage of the proceedings, — whether before issue or trial by removal to a Federal court, or after judgment upon appeal or writ of error.

2. As the Constitution imposes no limitation upon the class of cases involving controversies between citizens of different States, to which the judicial power of the United States may be extended, Congress may provide for bringing, at the option of either of the parties, all such controversies within the jurisdiction of the Federal judiciary.

3. The act of Congress of March 2, 1867 (14 Stat. 558), in authorizing and requiring the removal to the Circuit Court of the United States of a suit pending or afterwards brought in *any* State court involving a controversy between a citizen of the State where the suit is brought and a citizen of another State, thereby invests the Circuit Court with jurisdiction to pass upon and determine the controversy when the removal is made, though that court could not have taken original cognizance of the case.

4. A suit to annul a will as a muniment of title, and to restrain the enforcement of a decree admitting it to probate, is, in essential particulars, a suit in equity ; and if by the law obtaining in a State, customary or statutory, such a suit can be maintained in one of its courts, whatever designation that court may bear, it may be maintained by original process in the Circuit Court of the United States, if the parties are citizens of different States.

ERROR to the Supreme Court of the State of Louisiana.

This is an action in form to annul an alleged will of Daniel Clark, the father of the plaintiff in error, dated on the 13th of July, 1813, and to recall the decree of the court by which it was probated. It was brought in the Second District Court for the Parish of Orleans, which, under the laws of Louisiana, is invested with jurisdiction over the estates of deceased persons, and of appointments necessary in the course of their administration.

The petition sets forth, that on the 18th of January, 1855, the plaintiff in error applied to that court for the probate of the alleged will; and that, by decree of the Supreme Court of

the State, the alleged will was recognized as the last will and testament of the said Daniel Clark, and was ordered to be recorded and executed as such; that this decree of probate was obtained *ex parte*, and by its terms authorized any person at any time, who might desire to do so, to contest the will and its probate in a direct action, or as a means of defence by way of answer or exception, whenever the will should be set up as a muniment of title; that the plaintiff in error subsequently commenced several suits against the petitioners in the Circuit Court of the United States to recover sundry tracts of land and properties of great value, situated in the parish of Orleans and elsewhere, in which they are interested, setting up the alleged will as probated as a muniment of title, and claiming under the same as instituted heir of the testator; and that the petitioners are unable to contest the validity of the alleged will so long as the decree of probate remains unrecalled. The petitioners then proceed to set forth the grounds upon which they ask for a revocation of the will and the recalling of the decree of probate; these being substantially the falsity and insufficiency of the testimony upon which the will was admitted to probate, and the *status* of the plaintiff in error, incapacitating her to inherit or take by last will from the decedent.

A citation having been issued upon the petition, and served upon the plaintiff in error, she applied in proper form, with a tender of the necessary bond, for removal of the cause to the Circuit Court of the United States for the District of Louisiana, under the twelfth section of the Judiciary Act of 1789, on the ground that she was a citizen of New York, and the petitioners were citizens of Louisiana. The court denied the application, for the alleged reason, that, as she had made herself a party to the proceedings in the court relative to the settlement of Clark's succession by appearing for the probate of the will, she could not now avoid the jurisdiction when the attempt was made to set aside and annul the order of probate which she had obtained. The court, however, went on to say, in its opinion, that the Federal court could not take jurisdiction of a controversy having for its object the annulment of a decree probating a will.

The plaintiff in error then applied for a removal of the action

under the act of March 2, 1867, on the ground, that, from preju-
dice and local influence, she would not be able to obtain jus-
tice in the State court, accompanying the application with the
affidavit and bond required by the statute. This application
was also denied, the court resting its decision on the alleged
ground that the Federal tribunal could not take jurisdiction of
the subject-matter of the controversy.

Other parties having intervened, the applications were re-
newed, and again denied. An answer was then filed by the
plaintiff in error, denying generally the allegations of the peti-
tion except as to the probate of the will, and interposing a plea
of prescription. Subsequently a further plea was filed, to the
effect that the several matters alleged as to the *status* of the
plaintiff in error had been the subject of judicial inquiry in
the Federal courts, and been there adjudged in her favor. Upon
the hearing a decree was entered, annulling the will, and re-
voking its probate. The Supreme Court of the State having
affirmed this decree, this writ of error was sued out.

The act of March 2, 1867 (14 Stat. 558), is as follows: —

" That where a suit is now pending, or may hereafter be brought,
in any State court in which there is controversy between a citizen
of the State in which the suit is brought and a citizen of another
State, and the matter in dispute exceeds the sum of $500 exclusive
of costs, such citizen of another State, whether he be plaintiff or
defendant, if he will make and file in such State court an affidavit
stating that he has reason to and does believe that from prejudice
or local influence he will not be able to obtain justice in such State
court, may, at any time before final hearing or trial of the suit, file
a petition in such State court for the removal of the suit into the
next Circuit Court of the United States to be held in the district
where the suit is pending, and offer good and sufficient surety for
his entering in such court, on the first day of its session, copies of
all process, pleadings, depositions, testimony, and other proceedings
in said suit, and doing such other appropriate acts as, by the act
to which this act is amendatory, are required to be done upon the
removal of a suit into the United States Court: and it shall be
thereupon the duty of the State court to accept the surety, and
proceed no further in the suit; and, the said copies being entered
as aforesaid in such court of the United States, the suit shall there
proceed in the same manner as if it had been brought there by

original process; and all the provisions of the act to which this act is amendatory, respecting any bail, attachment, injunction, or other restraining process, and respecting any bond of indemnity or other obligation given upon the issuing or granting of any attachment, injunction, or other restraining process, shall apply with like force and effect in all respects to similar matters, process, or things in the suits for the removal of which this act provides."

*Mr. Jeremiah S. Black* and *Mr. George W. Paschal* for the plaintiff in error.

Two objections are made to the right of the plaintiff in error to remove this suit from the Second District Court of the Parish of Orleans to the Circuit Court of the United States. (1.) That said District Court has exclusive original jurisdiction of the subject-matter in controversy. (2.) That the Circuit Court of the United States has no original jurisdiction of a suit of this description; and it could, therefore, not be removed thereto.

The first objection is grounded upon a mistaken assumption. It is settled by repeated adjudications in Louisiana that such a suit might be brought in her courts of ordinary jurisdiction. *Reals* v. *McKnight*, 5 Mart. N. s. 9; *Cull* v. *Phillips*, 6 id. 304; *Palmer* v. *Palmer*, 1 L. R. 100; *Casanova* v. *Acosta*, id. 183; *Sharp* v. *Knox*, 2 id. 23, 25, 26; *Kemp* v. *Kemp*, 11 id. 22; *O'Donogan* v. *Knox*, id. 384; *Trahen's Heirs* v. *Arden's Heirs*, id. 393; *Clark* v. *Christine*, 12 id. 396. But, were it otherwise, State legislation could not limit the jurisdiction and remedies conferred upon the Federal tribunals by the constitution and statutes of the United States. *Cowles* v. *Mercer County*, 7 Wall. 118; *Payne* v. *Hook*, id. 425; *Railway Company* v. *Whitton*, 13 id. 270.

The answer to the second objection is as obvious as it is conclusive. This proceeding, by whatever name known in Louisiana, is, in its prominent characteristics, a suit in equity; and the relief thereby sought falls within a recognized head of equity jurisdiction. It might, therefore, have been brought in the Circuit Court; but, however this may be, the right to remove it there does not depend upon the question, whether its subject-matter is within the original jurisdiction of that court. No such condition or qualification is imposed by the act of 1872. *Any* suit

in a State court, in which there is a controversy between a citizen of the State where it is brought and a citizen of another State, if the matter in dispute exceeds the sum of $500, may be removed whenever the prescribed requirements as to the affidavit, petition, and bond, are fulfilled. This suit, therefore, was rightfully subject to removal under existing laws.

*Mr. Thomas J. Durant* and *Mr. James McConnell, contra.*

The second section of the third article of the United States Constitution declares that "the judicial power shall extend to . . . controversies between . . . citizens of different States."

The word "controversies" is here evidently used in the sense of "suits;" but does this mean all controversies?

If not, what are the exceptions?

To give jurisdiction, the Constitution and the acts of Congress which apportion the judicial power to the several courts of the United States must concur.

The eleventh section of the Judiciary Act of 28th September, 1789 (1 Stat. 78), says, —

"That the circuit courts shall have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of $500, and the United States are plaintiffs or petitioners, or an alien is a party, or the suit is between a citizen of a State where the suit is brought and a citizen of another State."

No suit can be removed to the national courts which might not by the Constitution of the United States have been originally commenced in one of these courts. Conkling's Treatise, 177; *Smith* v. *Rines*, 2 Sumn. C. C. 345; *Beardsley* v. *Torrey*, 4 Wash. C. C. 288. Congress never intended to authorize the defendant to remove any suit or proceeding before a State court, unless the Circuit Court of the United States had jurisdiction of the subject-matter of such suit, and had the power to do substantial justice between the parties. *Rogers* v. *Rogers*, 1 Paige, 183.

In order, therefore, that a suit may be transferred from a State to a National court, it must be of a civil nature, either at common law or in equity, between a citizen of the State where

the suit is brought and a citizen of another State, or against an alien; and the matter in dispute must exceed $500.

The expressions of the Judiciary Act refer to the systems of law prevailing in the country from which the Colonies mainly derived their jurisprudence; but in England there were several laws.  Goold, J., in *Regina* v. *Paty et als.*, 2 Ld. Raym. 1106.

" *Lex terræ* is not confined to the common law, but takes in all the other laws which are in force in this realm, as the civil and canon law," &c.  Id. 1108.

Probate proceedings were not matters either of common-law or equity cognizance, but appertained to the canon or ecclesiastical law.

" The executor must prove the will of the deceased, which is done either in common form, which is only upon his own oath before the ordinary or his surrogate, or *per testes*, in more solemn form of law, in case the validity of the will be disputed.  When the will is proved, the original must be deposited in the registry of the ordinary."  2 Bl. Com. 508.  " The prerogative court is established for the trial of all testamentary causes where the deceased has left *bona notabilia* in two different dioceses; in which case the probate of the wills belongs to the archbishop of the province, by way of special prerogative," &c.  Id. 3, 65, 66.

It follows, therefore, that this proceeding is not a suit or controversy at common law or in equity, and hence not within the jurisdiction conferred upon the courts of the United States. This court has, in effect, so decided.  Mr. Justice Davis, in delivering its opinion in *Gaines* v. *New Orleans*, 6 Wall. 642, uses this striking language: —

" The attempt to impeach the validity of this will shows the importance attached to it by the defence in determining the issue we are now considering.  But the will cannot be attacked here. When a will is duly probated by a State court of competent jurisdiction, that probate is conclusive of the validity and contents of the will in this court.

" But why, if the will is invalid, has the probate of it rested for twelve years unrecalled, when express liberty was given by the Supreme Court of Louisiana for any one interested to contest it in a direct action with the complainant?  If, with this clear indication of the proper course to be pursued, the probate of the will still

remains unrevoked, the reasonable conclusion is that the will itself could not be successfully attacked."

The defendants in error, being thus advised, brought this direct proceeding for revocation in the Probate Court. No other State court had jurisdiction. *McCombs* v. *Dunbar*, 1 La. 21; *Graham's Heirs* v. *Gibson*, 14 id. 150; *Aden* v. *Cabouret*, 1 La. Ann. 171. The right of removal cannot apply. Notwithstanding the decree admitting the will to probate authorized any person to contest the will and its probate as a means of defence by way of answer or exception, whenever it should be set up as a muniment of title, yet, when the case actually arose, the courts of the United States, for want of jurisdiction, denied the parties a hearing upon such a defence by way of answer, and declared that we must resort to a proceeding which could be only maintained in a State court of a peculiar and limited jurisdiction. When this opinion was given, the act of March 2, 1867, was in force, and it does not authorize the removal of any *suits* not provided for by former legislation. This court would not have declined to allow us to contest the validity of this pretended will in a Federal court, if jurisdiction over such a matter could have been subsequently acquired by removing under that act a case involving the identical questions. If the Federal courts have no original jurisdiction whatever in matters of probate, can it be exercised by them in a suit removed thereto from a State court merely on account of alleged local influence and prejudice? Such jurisdiction must be derived from express grant, and not from implication or inference. Before it can be wrested from the courts of probate, and be thus indirectly conferred upon the courts of the United States, the jurisprudence established by the following decisions of this and of other tribunals must be overthrown. *Case of Broderick's Will*, 21 Wall. 503; *Gaines* v. *New Orleans*, 6 id. 642; *Gaines* v. *Chew & Relf*, 2 How. 619; *Fonvergne* v. *City of New Orleans*, 18 id. 473; *Tarver* v. *Tarver*, 9 Pet. 179; *Adams* v. *Preston*, 22 How. 488; *Florentine* v. *Barton*, 2 Wall. 216; *Thompson* v. *Tolmin*, 2 Pet. 166; *Osgood* v. *Breed*, 12 Mass. 533; *Gelston* v. *Hoyt*, 3 Wheat. 316; *Tompkins* v. *Tompkins*, 1 Story, 552; *Armstrong* v. *Lear*, 12 Wheat. 175; *Laughton* v. *Atkins*, 1 Pick. 541; *Inhabitants of Dublin* v. *Chadbourne*, 16 Mass.

441; *Lalanne Heirs* v. *Moreau,* 13 La. 436; *Lewis's Heirs* v. *His Executors,* 5 id. 394; *Derbigny* v. *Pierce,* 18 id. 551; *Graham Heirs* v. *Gibson,* 14 id. 149; *Box* v. *Lawrence,* 14 Tex. 545; *Tibbatts* v. *Berry et al.,* 10 B. Mon. 490.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

In the view we take of the application of the plaintiff in error to remove the cause to the Federal court, no other question than the one raised upon that application is open for our consideration. If the application should have been granted, the subsequent proceedings were without validity; and no useful purpose would be subserved by an examination of the merits of the defence, upon the supposition that the State court rightfully retained its original jurisdiction.

The action is in form to annul the alleged will of 1813 of Daniel Clark, and to recall the decree by which it was probated; but as the petitioners are not heirs of Clark, nor legatees, nor next of kin, and do not ask to be substituted in place of the plaintiff in error, the action cannot be treated as properly instituted for the revocation of the probate, but must be treated as brought against the devisee by strangers to the estate to annul the will as a muniment of title, and to restrain the enforcement of the decree by which its validity was established, so far as it affects their property. It is, in fact, an action between parties; and the question for determination is, whether the Federal court can take jurisdiction of an action brought for the object mentioned between citizens of different States, upon its removal from a State court. The Constitution declares that the judicial power of the United States shall extend to " controversies between citizens of different States," as well as to cases arising under the Constitution, treaties, and laws of the United States; but the conditions upon which the power shall be exercised, except so far as the original or appellate character of the jurisdiction is designated in the Constitution, are matters of legislative direction. Some cases there are, it is true, in which, from their nature, the judicial power of the United States, when invoked, is exclusive of all State authority. Such are cases in which the United States are parties, — cases of

admiralty and maritime jurisdiction, and cases for the enforcement of rights of inventors and authors under the laws of Congress. *The Moses Taylor,* 4 Wall. 429 ; *Railway Co.* v. *Whitton,* 13 id. 288. But, in cases where the judicial power of the United States can be applied only because they involve controversies between citizens of different States, it rests entirely with Congress to determine at what time the power may be invoked, and upon what conditions, — whether originally in the Federal court, or after suit brought in the State court; and, in the latter case, at what stage of the proceedings, — whether before issue or trial by removal to a Federal court, or after judgment upon appeal or writ of error. The Judiciary Act of 1789, in the distribution of jurisdiction to the Federal courts, proceeded upon this theory. It declared that the circuit courts should have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature, at common law or in equity, involving a specified sum or value, where the suits were between citizens of the State in which they were brought and citizens of other States ; and it provided that suits of that character by citizens of the State in which they were brought might be transferred, upon application of the defendants, made at the time of entering their appearance, if accompanied with sufficient security for subsequent proceedings in the Federal court. The validity of this legislation is not open to serious question, and the provisions adopted have been recognized and followed with scarcely an exception by the Federal and State courts since the establishment of the government. But the limitation of the original jurisdiction of the Federal court, and of the right of removal from a State court, to a class of cases between citizens of different States involving a designated amount, and brought by or against resident citizens of the State, was only a matter of legislative discretion. The Constitution imposes no limitation upon the class of cases involving controversies between citizens of different States, to which the judicial power of the United States may be extended; and Congress may, therefore, lawfully provide for bringing, at the option of either of the parties, all such controversies within the jurisdiction of the Federal judiciary.

As we have had occasion to observe in previous cases, the

provision of the Constitution, extending the judicial power of the United States to controversies between citizens of different States, had its existence in the impression that State attachments and State prejudices might affect injuriously the regular administration of justice in the State courts. It was originally supposed that adequate protection against such influences was secured by allowing to the plaintiff an election of courts before suit; and, when the suit was brought in a State court, à like election to the defendant afterwards. *Railway Co.* v. *Whitton*, 13 Wall. 289. But the experience of parties immediately after the late war, which powerfully excited the people of different States, and in many instances engendered bitter enmities, satisfied Congress that further legislation was required fully to protect litigants against influences of that character. It therefore provided, by the act of March 2, 1867 (14 Stat. 558), greater facilities for the removal of cases involving controversies between citizens of different States from a State court to a Federal court, when it appeared that such influences existed. That act declared, that where a suit was then pending, or should afterwards be brought in *any* State court, in which there was a controversy between a citizen of the State in which the suit was brought and a citizen of another State, and the matter in dispute exceeded the sum of $500, exclusive of costs, such citizen of another State, whether plaintiff or defendant, upon making and filing in the State court an affidavit that he had reason to believe, and did believe, that from prejudice or local influence he would not be able to obtain justice in the State court, might, at any time before final hearing or trial of the suit, obtain a removal of the case into the Circuit Court of the United States, upon petition for that purpose, and the production of sufficient security for subsequent proceedings in the Federal court. This act covered every possible case involving controversies between citizens of the State where the suit was brought and citizens of other States, if the matter in dispute, exclusive of costs, exceeded the sum of $500. It mattered not whether the suit was brought in a State court of limited or general jurisdiction. The only test was, did it involve a controversy between citizens of the State and citizens of other States ? and did the matter in dispute exceed a specified

amount? And a controversy was involved in the sense of the statute whenever any property or claim of the parties, capable of pecuniary estimation, was the subject of the litigation, and was presented by the pleadings for judicial determination.

With these provisions in force, we are clearly of opinion that the State court of Louisiana erred in refusing to transfer the case to the Circuit Court of the United States upon the application of the plaintiff in error. If the Federal court had, by no previous act, jurisdiction to pass upon and determine the controversy existing between the parties in the parish court of Orleans, it was invested with the necessary jurisdiction by this act itself so soon as the case was transferred. In authorizing and requiring the transfer of cases involving particular controversies from a State court to a Federal court, the statute thereby clothed the latter court with all the authority essential for the complete adjudication of the controversies, even though it should be admitted that that court could not have taken original cognizance of the cases. The language used in *Smith* v. *Rines*, cited from the 2d of Sumner's Reports, in support of the position that such cases are only liable to removal from the State to the Circuit Court as might have been brought before the Circuit Court by original process, applied only to the law as it then stood. No case could then be transferred from a State court to a Federal court, on account of the citizenship of the parties, which could not originally have been brought in the Circuit Court.

But the admission supposed is not required in this case. The suit in the parish court is not a proceeding to establish a will, but to annul it as a muniment of title, and to limit the operation of the decree admitting it to probate. It is, in all essential particulars, a suit for equitable relief, — to cancel an instrument alleged to be void, and to restrain the enforcement of a decree alleged to have been obtained upon false and insufficient testimony. There are no separate equity courts in Louisiana, and suits for special relief of the nature here sought are not there designated suits in equity. But they are none the less essentially such suits ; and if by the law obtaining in the State, customary or statutory, they can be maintained in a State court, whatever designation that court may bear, we think they may

be maintained by original process in a Federal court, where the parties are, on the one side, citizens of Louisiana, and, on the other, citizens of other States.

Nor is there any thing in the decisions of this court in the case of *Gaines* v. *New Orleans*, reported in the 6th of Wallace, or in the case of *Broderick's Will*, reported in the 21st of Wallace, which militates against these views. In *Gaines* v. *New Orleans*, this court only held that the probate could not be collaterally attacked; and that, until revoked, it was conclusive of the existence of the will and its contents. There is no intimation given that a direct action to annul the will and restrain a decree admitting it to probate might not be maintained in a Federal as well as in a State court, if jurisdiction of the parties was once rightfully obtained.

In the case of *Broderick's Will*, the doctrine is approved, which is established both in England and in this country, that by the general jurisdiction of courts of equity, independent of statutes, a bill will not lie to set aside a will or its probate; and, whatever the cause of the establishment of this doctrine originally, there is ample reason for its maintenance in this country, from the full jurisdiction over the subject of wills vested in the probate courts, and the revisory power over their adjudications in the appellate courts. But that such jurisdiction may be vested in the State courts of equity by statute is there recognized, and that, when so vested, the Federal courts, sitting in the States where such statutes exist, will also entertain concurrent jurisdiction in a case between proper parties.

There are, it is true, in several decisions of this court, expressions of opinion that the Federal courts have no probate jurisdiction, referring particularly to the establishment of wills; and such is undoubtedly the case under the existing legislation of Congress. The reason lies in the nature of the proceeding to probate a will as one *in rem*, which does not necessarily involve any controversy between parties: indeed, in the majority of instances, no such controversy exists. In its initiation all persons are cited to appear, whether of the State where the will is offered, or of other States. From its nature, and from the want of parties, or the fact that all the world are parties,

the proceeding is not within the designation of cases at law or in equity between parties of different States, of which the Federal courts have concurrent jurisdiction with the State courts under the Judiciary Act; but whenever a controversy in a suit between such parties arises respecting the validity or construction of a will, or the enforcement of a decree admitting it to probate, there is no more reason why the Federal courts should not take jurisdiction of the case than there is that they should not take jurisdiction of any other controversy between the parties.

But, as already observed, it is sufficient for the disposition of this case that the statute of 1867, in authorizing a transfer of the cause to the Federal court, does, in our judgment, by that fact, invest that court with all needed jurisdiction to adjudicate finally and settle the controversy involved.

It follows from the views thus expressed that the judgment of the Supreme Court of Louisiana must be reversed, with directions to reverse the judgment of the parish court of Orleans, and to direct a transfer of the cause from that court to the Circuit Court of the United States, pursuant to the application of the plaintiff in error.       *Judgment reversed.*

MR. JUSTICE BRADLEY, with whom concurred MR. JUSTICE SWAYNE, dissenting.

The question, whether the proceeding in this case, which was instituted in the State Court of Probate, was removable thence into the Circuit Court of the United States, depends upon the true construction of the acts of Congress which give the right of removal. The first act on this subject was the twelfth section of the Judiciary Act of 1789, which declares " that if a suit be commenced in any State court against an alien, or by a citizen of the State in which the suit is brought against a citizen of another State " [and certain conditions and security specified in the act be performed and tendered], " it shall be the duty of the State court to . . . proceed no further in the cause, . . . which shall then proceed in the United States Court in the same manner as if it had been brought there by original process." This twelfth section cannot be entirely understood without reference to the preceding section, by which

the original jurisdiction of the Circuit Court was conferred. That section declares that the circuit courts shall have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of $500, and the United States are plaintiffs or petitioners, or an alien is a party, or the suit is between a citizen of the State where the suit is brought and a citizen of another State ; . . . but that "no civil suit shall be brought before either of said courts against an inhabitant of the United States by any original process in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ."

Now, the question arises, What proceedings are meant by the phrase "suits of a civil nature at common law or in equity," in the latter section, conferring original jurisdiction, and the phrase "a suit," in the former section, giving the right of removal? A "suit of a civil nature at common law or in equity" may, by virtue of the eleventh section, be brought in a circuit court if the parties are citizens of different States, and one of them is a citizen of the State where the suit is brought. "A suit" commenced in any State court by a citizen of that State against a citizen of another State may be removed into the Circuit Court; and, when removed, it is directed that "the cause shall then proceed in the same manner as if it had been brought there by original process." By this act, therefore, any "suit" which could have been originally brought in the Circuit Court may be removed there from the State court, if brought by a citizen of the State against a citizen of another State; and it was always supposed, that, if it could not be originally brought there, it could not be removed there, because it is to be proceeded in "as if it had been brought there by original process." Mr. Justice Story, in a case before him decided in 1836, in reference to this section used the following language : "It is apparent, from the language of the closing passage of the section above quoted, that it contemplates such cases, and such cases only, to be liable to removal, as might under the law, or at all events under the Constitution, have been brought before the Circuit Court by original process."

Judge Conkling, in his " Treatise on the United States Courts "
(a work long used with approbation by the profession), says, " It
is obvious, from the language of the twelfth section of the Judi-
cial Act, that it was not intended by it to extend the jurisdiction
of these courts over causes brought before them on removal
beyond the limits prescribed to their original jurisdiction; and
such, as far as it goes, is the judicial construction which has
been given to this section." Congress, undoubtedly, might
authorize, and in special cases has authorized, the removal of
causes from State courts to the United States Court which
could not have been originally brought in the latter. An
instance of the kind is found in this very twelfth section,
in a special case where a suit respecting the title to land has
been commenced in a State court between two citizens of
the same State, and one of the parties, before the trial, states
to the court by affidavit that he claims title under a grant
from another State. In *Bushnell* v. *Kennedy,* 9 Wall. 387,
however, this court held, that a citizen of one State sued
in another State by a citizen thereof on a claim which had
belonged to a citizen of the latter State, and had been as-
signed to the plaintiff, might have the cause removed to the
Circuit Court of the United States, although, perhaps, it
might not have been originally cognizable therein; but it still
remains to determine what kinds of controversies are intended
by the act.

Now, the phrase, " suits at common law and in equity," in
this section, and the corresponding term " suit," in the twelfth,
are undoubtedly of very broad signification, and cannot be
construed to embrace only ordinary actions at law and ordi-
nary suits in equity, but must be construed to embrace all
litigations between party and party which in the English sys-
tem of jurisprudence, under the light of which the Judiciary
Act, as well as the Constitution, was framed, were embraced
in all the various forms of procedure carried on in the ordi
nary law and equity courts, as distinguished from the ec-
clesiastical, admiralty, and military courts of the realm. The
matters litigated in these extraordinary courts are not, by a
fair construction of the Judiciary Act, embraced in the terms
" suit at law or in equity," or " suit," unless they have become

incorporated with the general mass of municipal law, and subjected to the cognizance of the ordinary courts.

Now, it is perfectly plain that an application for the probate of a will is not such a subject as is fairly embraced in these terms. This court has in repeated instances expressly said that the probate of wills and the administration of estates do not belong to the jurisdiction of the Federal courts under the grant of jurisdiction contained in the Judiciary Act; and it may, without qualification, be stated, that no respectable authority, in the profession or on the bench, has ever contended for any such jurisdiction. Whether, after a will is proposed for probate, and a *caveat* has been put in against it, and a *contestatio litis* has thus been raised, and a controversy instituted *inter partes*, Congress might not authorize the removal of the cause for trial to a Federal court, where the parties *pro* and *con* are citizens of different States, is not now the question. The question before us is, whether Congress has ever done so; and it seems to me that it has not. The controversy is not of that sort or nature which belongs to the category of a suit at law or in equity, as those terms were used in the Judiciary Act.

It is not intended to say that the validity of a will may not often come in question, and require adjudication in both a court of law and a court of equity. It does come in question frequently. *Devisavit vel non* is an issue frequently made at law, and directed in equity; and there are special cases, also, where the validity of a will may be investigated in equity, as shown in the case of *Broderick's Will*, lately decided by this court. But that is a very different thing from hearing and determining a question of probate, even when the question becomes a litigated one. This question belongs to special courts, having a special mode of procedure, and is subject to rules that took their origin in the ecclesiastical laws; and it certainly cannot be seriously contended, that, if the Federal courts have no jurisdiction of the probate of wills, they nevertheless have jurisdiction of proceedings to revoke the probate. This would be to assume the whole jurisdiction of the subject.

The proceeding in the case below was one to revoke the probate of a will; simply that, and nothing more. It was not merely to set aside the will so far as it affected the defendants

in error. Not at all. It brought up the question of probate under a form of proceeding peculiar to the course of justice in Louisiana, called an action of nullity. This action may undoubtedly be entertained in the Federal courts in that State; at all events, to set aside their own judgments. But can it be entertained when the object is to revoke the probate of a will by a decree to annul the judgment of probate? That is the precise question to be determined here.

It is contended, however, that the act of March 2, 1867, which gives the right of removal to the Federal court of a suit in which there is controversy between a citizen of the State in which the suit is brought and a citizen of another State, where the latter makes affidavit that he has reason to and does believe, that, from prejudice or local influence, he will not be able to obtain justice in the State court, extends the jurisdiction of the Circuit Court to cases of every kind of controversy which may be litigated between parties. But I cannot perceive any such intention in the act. There is no indication that the jurisdiction of the Federal court was meant to be extended to any class of cases to which it did not extend before. It authorizes the removal at any time before trial, and gives the right to the plaintiff as well as the defendant. These are the only changes that seem to have been in the mind of Congress.

If it is desirable that the right of removal should be extended to cases like the present, it is easy for Congress to legislate to that effect. Until it does so, the right in my judgment does not exist. Perhaps it is desirable that the law should be as the plaintiff in error contends it is; but it is not for the court to make the law, but to declare what law has been made. I cannot free myself from the conviction, that the decision of the court in this case is based rather upon what it is deemed the law should be than upon a sound construction of the statutes which have been actually enacted.

In my opinion, the judgment of the Supreme Court of Louisiana ought to be affirmed.

MR. CHIEF JUSTICE WAITE also dissented from the judgment of the court.