WAHA-LEWISTON LAND & WATER CO. v. LEWISTON-SWEETWATER IRRIGATION CO., Limited.

(Circuit Court, D. Idaho, N. D. December 19, 1907.)

1. REMOVAL OF CAUSES—AMOUNT OR VALUE IN DISPUTE—AVERMENTS OF PETITION.

An allegation in a petition for the removal of a suit to determine the right to take water from a public stream for irrigation or other purposes that the value of the matter in dispute exceeds $2,000, where not denied, is sufficient to authorize the federal court to take jurisdiction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, § 132.

Jurisdiction of Circuit Courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

2. SAME—RIGHT OF REMOVAL—SUIT AT LAW OR IN EQUITY.

The statutes of Idaho provide that one desiring to appropriate water from a stream must apply to the state engineer and obtain a permit; that, in case a stated part of the works has not been completed within a certain time, an after appropriator from the same stream may petition the state engineer for a revocation of the permit, and that officer, after investigation, shall either cancel the permit and notify the holder or refuse to do so and notify the petitioner; that, in either case, the party feeling himself aggrieved may appeal to the district court of the county in which the point of diversion is situated, making the other party defendant, and filing a petition and a copy of the petition to and decision of the state engineer. There is no further provision as to pleading or procedure. *Held*, that, after such an appeal has been taken, the proceeding in the district court is a "suit of a civil nature at common law or in equity," of which a Circuit Court of the United States is given concurrent jurisdiction with the state courts by section 1 of the judiciary act of March 3, 1875 (18 Stat. 470, c. 137, as amended by Act March 3, 1887, c. 373, 24 Stat. 552, and Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508]), and therefore removable under section 2 where the other requisite jurisdictional facts exist.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, § 11.]

On Motion to Remand to State Court.

Geo. W. Tannahill, W. B. Heyburn, W. H. Batting, and Alfred A. Fraser, for plaintiff.

James E. Babb, for defendant.

DIETRICH, District Judge. The Idaho statutes, establishing a system for the appropriation and distribution of water for irrigation and other useful purposes, provide that one desiring to divert water from a natural stream shall make application for a permit to the state engineer. Upon receipt of such an application, if the same is in proper form, the state engineer indorses his approval, and a public record thereof is made. The application so indorsed constitutes a license authorizing the applicant to divert water in accordance with its terms. It is further provided by law that if the holder of a permit, at the expiration of one-half the time set for the completion of the diverting works, shall not have completed at least one-fifth of the work of construction as contemplated in the application for such permit, any person holding any permit for the diversion of water from the same stream postdating the permit for the diversion of waters through such unfinished works may, on or before the date set for the completion of one-half of the work of construction, petition the state engineer to cancel the prior permit. This petition must set forth the facts in relation to the condition of the unfinished work, and must be certified to by a competent engineer. On receipt of such petition, it is the duty of the state engineer to make or cause to be made an examination of the works in question, and, if he is satisfied that less than such one-fifth of the work of construction has been done on such date, it is his duty to cancel the permit, and he must thereupon at once notify the holder of the permit by registered mail of such action, stating the reason of the cancellation. If, upon the other hand, he refuses to cancel the permit, he must in like manner notify the person filing the petition. Either party feeling himself aggrieved by the action of the state engineer may take an appeal to the district court of the county in which the point of diversion of the works in question is situated. "Such appeal shall be within sixty days from the receipt of the notice of such action of the state engineer, and if the petitioner to such state engineer shall file the appeal the holder of the permit in question shall be the defendant, and if the holder of such permit which has been canceled shall be the appellant, the party who petitioned for such cancellation shall become the defendant in such appeal, and such appeal shall be perfected when the appellant shall have filed in the office of the clerk of such District Court, a copy of such petition to the state engineer and a copy of the decision of such engineer, certified by such engineer as true copies, together with the petition to such court setting forth the appellant's reason for appeal." I have quoted in full the statutory language relative to appeals; and it will be observed that no provision is made for pleadings in court after the appeal is perfected, and there is also an entire absence of any regulation of the mode of procedure or specification of the questions to be tried.

On August 6, 1904, the state engineer approved an application of Mary E. Godard to divert a certain amount of water from Soldiers' Meadow creek, in Nez Perce county, Idaho. This permit was afterwards transferred to the appellant, Waha-Lewiston Land & Water Company, a corporation, organized under the laws of the state of Idaho, and hereinafter referred to as the "Idaho Corporation." There-

after, on the 25th day of October, 1904, the state engineer approved the application of one Lafe Pence to divert water from the same stream. This permit was by assignment transferred to the defendant, Lewiston-Sweetwater Irrigation Company, Limited, a corporation, organized under the laws of the state of Oregon, and hereinafter called the "Oregon Corporation." On February 28, 1907, this last-named company filed with the state engineer a petition for the cancellation of the permit first referred to, owned by the Idaho corporation. Acting in compliance with the statutes, the state engineer caused investigation to be made, and thereafter, on March 12, 1907, canceled the permit of the Idaho corporation, duly notifying the holder of the permit of his action. Thereupon, in pursuance of the statutes, the Idaho corporation appealed to the district court of Nez Perce county, Idaho, and caused the statutory record to be filed with the clerk of that court on the 26th day of April, 1907. On May 13, 1907, the Oregon corporation filed with the clerk of the district court of Nez Perce county a petition for the removal of the cause to this court, accompanied by bond, both petition and bond being in the usual form, and at the same time filed a demurrer to the "Petition on Appeal" of the Idaho corporation. Thereafter an order was made by Hon. Edgar Steele, judge of said court, approving the bond, and directing that no further proceedings be taken in the state court. A transcript of the record was filed in this court upon September 9, 1907, and the Idaho corporation has made a motion that the cause be remanded to the state court, upon the grounds: (1) That this court has no jurisdiction to hear and determine the cause; (2) that the amount in dispute is not of a value in excess of $2,000; (3) that the record does not affirmatively show facts essential to confer jurisdiction; and (4) "that this action involves a controversy under a state statute, and is statutory in its nature, and does not involve any question sufficient to confer jurisdiction upon the above entitled court, either by direct suit or by removal of this cause from the state court to the United States Circuit Court." Substantially only two questions were discussed at the argument, namely, the amount in controversy, and the question whether or not a proceeding of such peculiar origin and form is removable.

The first question may be summarily disposed of. The petition for removal in express terms alleges the jurisdictional amount. That the cancellation of the prior permit may be not only of great pecuniary loss to the Idaho corporation, but of great pecuniary value to the Oregon corporation, is obvious. It is to be assumed that there is not enough water to supply both permits, or the Oregon corporation would have no interest in attacking the validity of the permit of the other party; and, it being alleged that the value of the matter in dispute exceeds $2,000, and there being no denial of such allegation, the court, for the purpose of entertaining jurisdiction, must assume the allegation to be true.

The real question involved is the removability of a proceeding of this nature. By section 2 of the act of March 3, 1875 (18 Stat. 470, c. 137) as amended by the act of March 3, 1887 (24 Stat. 552, c. 373),

and Act of August 13, 1888 (25 Stat. 433, c. 866 [U. S. Comp. St. 1901, p. 510]), it is provided that:

"Any other suit of a civil nature at law or in equity of which the circuit courts of the United States are given jurisdiction by the preceding section * * * may be removed into the Circuit Court of the United States for the proper district by the defendant or defendants therein, being nonresidents of the state."

Section 1 confers upon the Circuit Courts original jurisdiction concurrent with the courts of the several states "of all suits of a civil nature at common law or in equity * * * in which there shall be a controversy between citizens of different states in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value" of $2,000.

(1) Is this a "suit of a civil nature at common law or in equity?" (2) If it be deemed to be such a suit, does it fall within the class defined in the language above quoted from section 1, and of which the Circuit Courts are thereby given original jurisdiction? (3) If the foregoing questions are answered in the affirmative, does the fact that the proceeding was in a sense initiated before the state engineer and came into the state district court by "appeal" present an insurmountable obstacle to the removal?

The phrase, "suits at common law and in equity," cannot be construed to embrace only ordinary actions at law and ordinary suits in equity; but it was doubtless intended thereby to include all the proceedings carried on in the ordinary law and equity courts as distinguished from proceedings in military, admiralty, and ecclesiastical courts. Gaines v. Fuentes, 92 U. S. 10, 23 L. Ed. 524. In the majority opinion (page 20 of 92 U. S. [23 L. Ed. 524]) it is said:

"And a controversy was involved in the sense of the statute whenever any property or claim of the parties capable of pecuniary estimation was the subject of litigation, and was presented by the pleadings for judicial determination."

See, also, Justice Bradley's dissenting opinion on page 24 of 92 U. S. (23 L. Ed. 524).

In Weston v. City of Charleston, 2 Pet. 464, 7 L. Ed. 481, Chief Justice Marshall said:

"The term 'suit' is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice by which an individual pursues that remedy which the law affords. Modes of proceeding may be various; but, if a right is litigated in a court of justice, the proceeding by which a decision of the court is sought is a suit."

In Upshur County v. Rich, 135 U. S. 467, 10 Sup. Ct. 651, 34 L. Ed. 196, the earlier cases decided by that court are collocated and commented upon, and the principle was deduced therefrom that a proceeding not in a court of justice, but carried on by executive officers in the exercise of their proper functions, as, for instance, the valuation of property for the purpose of taxation, is purely administrative, and cannot be regarded as a "suit," and that an appeal in such case to a board having no judicial powers is not a suit; "but that such an appeal may become a suit if made to a court or tribunal having power to

determine questions of law and fact, either with or without a jury, and there are parties litigant to contest the case on the one side and the other." See, also, Parsons v. Bedford, 3 Pet. 433, 7 L. Ed. 732; In re Stutsman County (C. C.) 88 Fed. 337; Kirby v. Chicago & N. W. R. Co. (C. C.) 106 Fed. 551; Union Terminal Ry. Co. v. Chicago R. Co. (C. C.) 119 Fed. 209. It seems clear to me that, when the Idaho corporation took this proceeding by appeal into the state district court for Nez Perce county, it was brought within this principle and became a "suit." There are parties litigant. There are questions of law and fact to be decided. These are to be determined by a tribunal whose functions are strictly judicial. It is true that the statute is very meager, if it is not entirely silent, as to the mode of procedure, and in this respect it may be regarded as defective; but the jurisdiction of the federal court is not thereby necessarily defeated. Perhaps no greater difficulty would be experienced by the federal court in providing the mode of procedure than would be found to exist in the state court if the controversy were left to be tried out there. But is the suit within the class of which the United States Circuit Courts have original jurisdiction? The jurisdictional amount is involved and the requisite diversity of citizenship exists, and the party upon whose petition the cause was removed is a nonresident of the district. The question now is not whether the act is sufficient to confer jurisdiction upon the state courts, but, assuming it to be effective for that purpose, is such a proceeding in the state district court a "suit," as contemplated by the federal removal act? I am of the opinion that it is. But the Idaho statute provides that the inquiry shall be commenced before the state engineer, and, in case of appeal, the appeal shall be taken "to the district court of the county in which the point of diversion of the works in question is situated." In other words, the cause of action is a statutory right, and the tribunal to which the controversy is to be taken is specified in the statute. In Railroad Company v. Davidson, 157 U. S. 201, 15 Sup. Ct. 563, 39 L. Ed. 672, referring to section 2 of the act of 1887–88, authorizing the removal of causes, Mr. Chief Justice Fuller said:

"The jurisdiction of the Circuit Courts of the United States on removal by the defendant under this section is limited to such suits as might have been brought in that court by the plaintiff under the first section."

See, also, Tennessee v. Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511; In re Cilley (C. C.) 58 Fed. 977.

This language is sweeping, and, considered apart from the facts involved in the case, it might very well be taken to mean that, unless the plaintiff might have originally instituted the proceeding in question in the United States Circuit Court, a nonresident defendant could not remove it; but it will be observed that the language of the statute is not that "cases may be removed which could have been commenced" in the circuit court, but it is that suits "of which the circuit courts are given jurisdiction by the preceding section" may be removed; and the court in using the language quoted doubtless had reference, not to matters of procedure, but to those facts or features specified in the first section of the act as being jurisdictional. These essential elements are that the controversy must involve more than $2,000, that it

must exist between citizens of different states, and that it must be a suit of a civil nature at common law or in equity. In the Stutsman Case, above referred to, the precise question is very ably discussed, and it is there concluded:

"So, notwithstanding the proceeding under the North Dakota statute for the collection of taxes is of such character, owing to its procedure, that it could not be commenced in the federal courts, the controversy which has been removed by the petitioners presents every element mentioned in the first section of the judiciary act as essential to its original jurisdiction, and jurisdiction on removal is therefore complete."

In Union Terminal Ry. Co. v. Chicago (C. C.) 119 Fed. 209, the exact question was again considered, and, after most careful consideration, the same conclusion was reached; the Stutsman Case being referred to with approval. I am constrained to take the same view.

But can removal be had after the proceedings before the state engineer and after an appeal has been taken to the state court? Questions of a similar nature have not infrequently arisen in connection with proceedings in eminent domain. Such a case is Boom County v. Patterson, 98 U. S. 403, 25 L. Ed. 206. Patterson was the owner in fee of some land which the boom company sought to condemn for public use under the statutes of the state of Minnesota. Condemnation was initiated by the appointment of commissioners, whose function it was to appraise the value of the property sought to be condemned. If the award of the commissioners was not satisfactory, the aggrieved party could appeal to the district court, and thereupon it was the duty of the court to "proceed to hear and determine such case in the same manner that other cases are heard and determined in said court." Both the boom company and Patterson appealed from the award of the commissioners, and, when the case was brought before the district court, Patterson, who was a citizen of the state of Illinois, removed the cause to the Circuit Court of the United States. There the case was tried; and to review the resulting judgment the company took the case to the Supreme Court upon writ of error. The Supreme Court says:

"The proceeding in the present case before the commissioners appointed to appraise the land was in the nature of an inquest to ascertain its value, and not a suit at law in the ordinary sense of those terms; but, when it was transferred to the District Court by appeal from the award of the commissioners, it took, under the statute of the state, the form of a suit at law, and was thenceforth subject to its ordinary rules and incidents. * * * The case would have been in no essential particular different had the state authorized the company by statute to appropriate the particular property in question and the owners to bring suit against the company in the courts of law for its value. That a suit of that kind could be transferred from the state to the federal court if the controversy were between the company and a citizen of another state cannot be doubted. And we perceive no reason against the transfer of the pending case that might not be offered against the transfer of the case supposed."

See, also, Pacific Railroad Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319.

The rule thus stated seems to be almost decisive of the question under consideration. In City of Terre Haute v. Evansville R. Co. (C. C.) 106 Fed. 545, it is said:

"Nor does the fact that the law of the state requires the questions of law and fact involved in the case to be brought into a court of the state by appeal, instead of by summons or other process, affect the defendant's right of removal. The method of procedure by which a suit is brought or instituted in a court of the state is merely formal and modal, and in no wise affects the right of removal, if in other respects the defendant possesses that right. In re Jarnecke Ditch (C. C.) 69 Fed. 161, 163."

To the same effect is Kirby v. Chicago & N. W. R. Co. (C. C.) 106 Fed. 551.

The proceedings prescribed by the Idaho statutes to be taken before and by the state engineer are essentially nonjudicial in their character, and are purely administrative, and in no sense do they constitute a suit at law or in equity. However, under the system of water appropriation obtaining in Idaho, when a later appropriator asserts the claim that a prior appropriation has lapsed or has been forfeited, or for any other reason has become invalid, a controversy arises involving property or a claim capable of pecuniary estimation, and, when such controversy is brought into a judicial tribunal for determination, a suit is initiated, whatever may be the means of bringing it into court or the mode of procedure thereafter followed by the court, culminating in a judgment finally determining the claims and rights of the parties litigant. In the arid region litigation between persons claiming to have appropriated water from the same stream, for the purpose of determining the amounts and the dates of their appropriations, is familiar both to the state and the federal courts. By reason of the prevailing principle that priority of appropriation confers superiority of right, each claimant to the waters of a stream, the amount of which is not sufficient to satisfy all claims, as is not infrequently the case, is directly and vitally interested, not only in establishing the validity of his own claim, but in having it determined that other claims are either invalid, or are subsequent, for his own claim would be rendered entirely worthless, even though valid, should all the water of the stream be required to satisfy other prior claims. While the questions of fact and of law to be found and determined in a case like that at bar are different in detail from those involved in the ordinary water case, still the matter in controversy is essentially the same. It is a property right, of a certain value if the earlier licensee's rights have lapsed, and of a radically different value, or of no value, if such rights are still in force; and hence a property right capable of pecuniary estimation is clearly involved.

The state engineer's proceedings are ex parte, and are neither in form nor substance judicial in their nature. The Legislature may have contemplated that in some, if not many, instances licensees would not resist cancellation of permits, and that the proceedings before and by the engineer would furnish a simple and inexpensive mode for formally and publicly declaring the termination of the licenses, and of clearing the public record of an apparent, though nonexistent, right. In case, however, the holder of the permit has not abandoned his right, and claims that the same is not forfeited, having notice of the action of the state engineer, he may institute a judicial inquiry. Other modes might have been provided for instituting the action, but the

Legislature in its wisdom saw fit to call the proceedings an "appeal." Whether the means and method prescribed are sufficient to enable the state court to acquire jurisdiction of the parties is not a question now under consideration. It simply need be said that the Legislature intended and attempted to confer jurisdiction upon a judicial tribunal, and whether its intention in that regard has been rendered effectual is for the court in which such question is raised, be it state or federal, to determine. In support of its motion, counsel for the Idaho corporation have referred to section 20 of article 5 of the Constitution of Idaho, which provides that "the District Court shall have original jurisdiction in all cases both at law and in equity and such appellate jurisdiction as may be conferred by law"; but upon reflection I am unable to see how this section is pertinent. It surely will not be contended that the jurisdiction thus conferred upon the state district court is exclusive, for, if such a view were adopted, removal could be had to the federal court in no case on the ground of diversity of citizenship.

Further reference is made to section 10 of article 11, which, among other things, provides that "no company or corporation formed under the laws of any other country, state or territory shall have or be allowed to exercise or enjoy within this state any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of this state"; and, in connection therewith, the case of Security Mutual Life Insurance Company v. Prewitt, 202 U. S. 246, 26 Sup. Ct. 619, 50 L. Ed. 1013, is cited. By the majority opinion in this case it is held that, it being within the power of a state to prevent a foreign corporation from doing business at all within its borders, the state has a right to impose as a penalty for the removal of a case from the state to the federal courts the forfeiture of the corporation's license to do business in the state. It is not decided that it is competent for a state, either by its Constitution or by Legislative act, to prohibit the removal of a proper case to the federal courts; indeed, just the contrary rule is recognized.

It follows that the motion must be denied.