BANK OF THE UNITED STATES, (RITCHIE v.) See Case No. 11,863.

## Case No. 934.

BANK OF THE UNITED STATES v. ROBERTS et al.

[4 Conn. 323.]

Circuit Court, D. Kentucky. 1822.

CONSTITUTIONAL LAW — JUDICIAL POWER OF THE UNITED STATES — JURISDICTION OF CIRCUIT COURTS — PRACTICE — BANK OF THE UNITED STATES.

[1. By the usages of this country and the rules of practice in the federal courts in Kentucky, it is not necessary in any case that a party should make out a warrant of attorney authorizing an attorney to appear for him, and in such courts a corporation may sue under its corporate style and character, and not by attorney.]

[2. The judicial power of the United States extends to two classes of cases: (1) Those in which the supreme court has original jurisdiction; (2) those in which it has only appellate jurisdiction. In cases of the second class the federal jurisdiction is dormant until its exercise is authorized by congress, and a circuit court can have no jurisdiction in such cases except as it is expressly granted by congress.]

[3. The provision of the constitution giving congress power to establish inferior courts, necessarily confers power to give to such inferior courts jurisdiction in all cases to which the judicial power of the United States extends, and as to which original jurisdiction is not given to the supreme court by the constitution.]

[4. The provision of the act incorporating the Bank of the United States, giving it power to sue and be sued, etc., in any state court of competent jurisdiction, or in any circuit court of the United States, authorizes the bank to sue and be sued in a federal circuit court in every case, and should not be construed so as to limit such power to cases wherein circuit courts have jurisdiction only by virtue of the judiciary act.]

[Cited in Bank of U. S. v. Northumberland Bank, Case No. 931.]

[5. Where the judiciary act is in conflict with the act incorporating the Bank of the United

States in respect to the jurisdiction of circuit courts, the bank act, being of more recent date, should prevail.]

[6. The act incorporating the Bank of the United States, while it gives jurisdiction to circuit courts in all cases to which the bank is a party, contains no provision as to costs. *Held*, that if the bank recovers less than $500 in a circuit court it cannot recover costs, and may be adjudged to pay the whole costs of the suit in the sound discretion of the court.]

[7. The provision of the act incorporating the Bank of the United States, which gives concurrent jurisdiction to state and federal courts in cases to which the bank is a party, is fairly within the competence of congress, since state courts, if their jurisdiction were exclusive, might, by refusing to take jurisdiction in such cases, indirectly deprive the bank of its chartered powers and paralyze its operations.]

[At law. Action by the president, directors, and company of the Bank of the United States against Thomas Q. Roberts and Henry H. Roberts to recover upon a bill of exchange. On demurrer to the declaration. Overruled.]

PER CURIAM. The declaration in this case contains two counts. The first is on a bill of exchange drawn by the defendants, in Kentucky, upon Thomas Townley & Co. of New Orleans, in favour of William Bard, or order, payable ten days after sight. The bill, by the procurement of the defendants, was indorsed by William Bard to Samuel T. Beal, and by him indorsed, and the contents directed to be paid, to the plaintiffs; and afterwards, at the instance of the defendants, was discounted and purchased by the plaintiffs, at their office of discount and deposit, established at Lexington; and which bill, after thus becoming the property of the plaintiffs, was presented, and protested for nonpayment. The second count is in the usual form, for money had and received by the defendants, to the use of the plaintiffs. The plaintiffs sue, in their corporate character, in the name and style conferred on them by the act of incorporation, and not by attorney; and the declaration contains no averments as to the citizenship of the defendants, nor of the corporators, nor of any of the parties concerned in the transaction. The defendant, Thomas Q. Roberts, has demurred to the declaration, alleging "that the declaration and the counts therein contained are severally insufficient to authorize this court to take jurisdiction of the case, or render judgment thereon." The act of congress [3 Stat. 266] incorporating the subscribers to the Bank of the United States (section 7) provides, that the corporation, by the name and style of the "President, Directors and Company of the Bank of the United States," shall be able and capable in law to sue and be sued, &c., without requiring them to sue by attorney. By the usages of this country, and the rules of practice in this court, it is not necessary, in any case, that a plaintiff should make out a warrant of attorney, authorizing an attorney to appear and prosecute for him. In the

case of Kentucky Ins. Co. v. Hawkins, 4 Bibb, 470, the court of appeals of this state held, that the proceedings were sufficient to enable the plaintiffs to recover, although in that case they sued in their corporate style and character, and not by attorney. We think there is no weight in the first cause of demurrer, and will dismiss it without further observation.

The other causes of demurrer call in question the jurisdiction of this court. Without going into a minute examination of each particular cause assigned, in detail, we will proceed to consider the question of jurisdiction upon general principles, tested by the constitution and laws. The constitution of the United States provides (article 3, § 1) that "the judicial power of the United States shall be vested in one supreme court, and in such inferior courts as congress may, from time to time, ordain and establish." Section 2: 1st. "The judicial power shall extend to all cases, in law and equity, arising under this constitution, the laws of the United States, and treaties made, or which shall be made, under their authority; to all cases affecting ambassadors, or other public ministers and consuls; to all cases of admiralty and maritime jurisdiction; to controversies to which the United States shall be a party; to controversies between two or more states; between a state and citizens of another state; between citizens of different states; between citizens of the same state, claiming lands under grants of different states; and between a state, or citizens thereof, and foreign states, citizens or subjects." 2d. "In all cases, affecting ambassadors, other public ministers and consuls, and those in which a state shall be a party, the supreme court shall have original jurisdiction. In all other cases before mentioned, the supreme court shall have appellate jurisdiction, both as to law and fact, with such exceptions, and under such regulations, as the congress shall make." The seventh section of the act of congress incorporating the subscribers to the Bank of the United States, enacts and provides, that "the subscribers to the Bank of the United States of America, their successors and assigns, shall be and are hereby created, a corporation and body politic, by the name and style of 'The President, Directors and Company of the Bank of the United States;' and, by that name, shall be, and are hereby made, able and capable in law (inter alia) to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all state courts having competent jurisdiction, and in any circuit court of the United States." Does this section of the act of congress confer on this court jurisdiction of the case before us? If it does not, it will readily be admitted, that there is a failure of jurisdiction. This case is not brought within any of the provisions of former acts of congress, declaring the jurisdictions of the circuit courts; nor does it

belong to either class of cases, authorized by the act, entitled "An act to establish the judicial courts of the United States," to be brought in the circuit courts of the United States.

It must be admitted, too, that whatever may be the extent of the judicial power of the United States, as declared by the constitution, the circuit court can only exercise such portions of that power as are expressly conferred upon it by congress. This results, necessarily, from the nature of the power, and the provisions of the constitution. The judicial power of the United States, is, by the constitution, declared to extend to eleven enumerated classes. This may properly be said to be the potential judicial power; to be called into action, either by some subsequent provisions of the constitution, or by law, or by both. Hence we find, that the constitution proceeds afterwards to declare, that this judicial power shall be vested in one supreme court, created by the constitution, and in such inferior courts as congress shall from time to time ordain and establish. The constitution defines the portions of the judicial power vested in that supreme court, and leaves the residue to be distributed among the inferior courts, which might be established by law; and to be vested, or not vested, in them respectively, from time to time, according to the sound discretion of congress. It follows, that a court, created by law, can only exercise the jurisdiction, which the law confers upon it. It cannot assume jurisdiction, under the constitution alone, without legal power being superadded. It will be conceded further, that the circuit courts of the United States, will not, and cannot take cognizance, by implication. With these concessions, and under these circumstances, has the act of incorporation conferred upon this court jurisdiction?

That the words of the law are not sufficiently explicit to give jurisdiction, will not bear an argument. The charter declares the bank may sue and be sued in any "state court having competent jurisdiction, or in any circuit court of the United States." The right of appealing to the federal tribunals, is, by the charter, made reciprocal, between the bank and the people. If a citizen should appeal to this court for redress against the bank, we should turn him away with an ill grace indeed, by telling him, that although the law said he might sue here, it did not say we should entertain jurisdiction of the suit; and that, therefore, we would give him no redress. The declaration of the law, that the party may sue in a designated court, must, ex vi termini, include the idea, that the court shall be competent to entertain the suit. The law must mean that, or nothing; for it would be futile or ridiculous to send a party into court, for no other purpose but to be sent out again, for want of jurisdiction. We cannot hesi-

tate to believe, that the letter of the charter is sufficiently explicit to give the circuit courts of the United States jurisdiction in all suits by or against the bank. But it is contended for the defendant, that although, by the letter of the statute, the court might have jurisdiction; yet, according to its sound construction, it is otherwise. This has been argued several ways. It was said, that wherever a corporation is erected, the very creation of the corporation, by operation of law, gives it the capacity of suing and being sued; and that therefore, as the words of the charter declaring the capacity of this corporation to sue and be sued only express that which would have resulted by operation of law, without them, they ought to be disregarded in the construction of the statute. This doctrine might have been tenable, if the charter had confined itself to a simple declaration of the corporation's legal capacity to sue and be sued, without designating in what courts that capacity should be exercised. In that case, it might safely be admitted, that the law expressed no more than would have been implied, without being expressed; and good sense would seem to dictate, that, in such a case, the construction should be the same, with or without the words. We think the principle urged in argument wholly inapplicable to the case before us. The statute does not, in its expressions, confine itself to what would otherwise have been implied. It not only declares the capacity of the corporation to sue, but expresses in what courts: "In any state court having competent jurisdiction, or any circuit court of the United States." Surely, it will not be contended, that these expressions, or the idea conveyed by them, would have been supplied, by mere intendment and operation of law. If so, there would be an end of the argument. We cannot, on this ground, be authorized to reject the words of the statute.

It has been argued, that the act incorporating the bank, and the general act establishing the judicial courts of the United States, should be construed together as statutes made in pari materia; that such construction should be given to the incorporating act as would make it consist with the judicial act; and that consequently, the general expression of the act of incorporation, should be qualified and restrained, so as to permit the bank to sue in the circuit courts of the United States, in those cases only, in which it might have sued in those courts, by the provisions of the judicial act. This argument will not bear examination. If, as was very properly urged in the argument for the plaintiffs, the two statutes are consistent in their provisions, they may very well stand together, without any violence to the expressions of either; but if they are inconsistent, the incorporating act being the last expression of the legislative will, must prevail. The constitution of the United States has

divided the judicial power of the Union into eleven distinct classes. As already remarked, it vested a portion of that power in the supreme court, subject to limitations and regulations, to be imposed by congress, and left the residue of that power to be disposed of according to the sound discretion of congress. It is very clear, that the congress did not, in the judicial act, dispose of the whole of that residue, or, in other words, did not vest it in any court. An example or two will serve to prove this position. The judicial act makes no provision authorizing the patentee of a new discovery or invention to sue in the courts of the Union, for an injury done to his patent rights. This manifestly pertained to the judicial power of the Union. The first act of congress, passed on the subject of those rights, did not authorize the patentees to sue in the circuit courts; in consequence of which omission, they were compelled to resort to the tribunals of the states for redress; but, by a subsequent act of congress, they were authorized to sue in the circuit courts, in terms very similar to those used in the charter of the bank. Again, the judicial act did not authorize the assignee of a promissory note, or other chose in action, to sue in the courts of the United States, upon the ground of the plaintiff and defendant being citizens of different states, unless the assignor and the defendant were in the same attitude; although the judicial power of the United States extends, by the constitution, expressly, to all controversies between citizens of different states, whatever may be the subject of controversy. Congress might well, therefore, in any subsequent statute, as they have done in the charter of the bank, provide for a case not provided for in the judicial act, and give jurisdiction beyond the provisions of that act within the limits of the judicial power of the Union. This is a case of that sort; a case before unprovided for. It is a rule in the construction of statutes, equally dictated by the principles of law and good sense, that all the words of a statute shall have some operation, if by possibility they may. A decent respect for the legislature forbids us to believe, that when they speak, they mean differently from what they say, or mean nothing. It is a rule of construction, that a subsequent statute shall control a former; but a former shall not control a subsequent one. This rule results from the very nature of legislation. The last declaration of the public will must prevail. But these rules would be violated, by adopting the construction contended for, on behalf of the defendant, so far as the judicial act and charter of the bank are inconsistent in their provisions. It would require us to reject the expressions of the latter to make it conform to the former; to reject them, too, without necessity, when they are sensible and significant in themselves, and not repugnant to any other expressions used in the statute. No court can be at liberty to indulge such a license in the construction of statute. It was further argued, that the court ought not to take jurisdiction by the construction. This has been already admitted; but the words of the statute are explicit, as has been shown; and it is only by construction, that this court can excuse itself from the exercise of jurisdiction: a construction, too, not warranted by any known rules of interpretation.

The argument derived from the subject of costs is entitled to no weight. Costs are the creatures of statutes. The act chartering the bank is silent on the subject; there is, therefore, no repugnance between it and the judicial act; and consequently, its provisions, in relation to costs, will govern in suits brought by the bank, as in other cases, Although the bank may, from the provisions of its charter, sue in this court for any sum without limitation; yet if it recovers less than five hundred dollars, it cannot recover costs, and may be adjudged to pay the whole costs of suit, in the sound discretion of the court, as other suitors. On the whole, we entertain no doubt of the jurisdiction of this court, if congress possessed the constitutional power to confer it.

This leads to an enquiry of great importance to the bank, and to the good people of the United States: Is the provision in the charter, that the bank may "sue and be sued in any state court having competent jurisdiction, or in any circuit court of the United States," unconstitutional and therefore void? It is admitted, that the power of congress to give jurisdiction to the circuit courts of the United States, in suits instituted by the bank, can be maintained only under the first number of the second clause of the third article of the constitution, declaring that the judicial power of the Union "shall extend to all cases in law and equity, arising under the constitution, the laws of the United States and treaties made, or which shall be made, under their authority." Is the case upon record one "arising under the laws of the United States"? We have felt the novelty and difficulty of the question. It has demanded, and received, our most anxious and deliberated reflections; and the result is, a conviction that we are bound to respond in the affirmative. In the case of McCulloch v. Maryland, [4 Wheat. (17 U. S.) 316,] in the supreme court of the United States, the court decided, that the act "to incorporate the subscribers to the Bank of the United States" is a law made in pursuance of the constitution. That court being the supreme judicial tribunal of the nation, expressly vested, by the constitution, with power to decide, in the last resort, all questions of constitutional law, growing out of the laws of the United States, in its decision, is authoritative and conclusive, in all the courts of the United

States. The learned counsel, therefore, very properly made no question as to the constitutional power of congress to establish the bank. If congress had power to create the corporation, it would seem not to admit of a doubt, that congress must have power to maintain its existence, to protect its powers, to enforce its rights, and to furnish the means of carrying on its operations. The bank was established as a necessary instrument to aid the government in its fiscal concerns. Could this national object be certainly effected, without conferring jurisdiction on the national tribunal? We think not. The state tribunals might safely be left to exercise concurrent, but not exclusive jurisdiction. Whether they would entertain jurisdiction or not, would depend on the courts themselves, and the jurisdiction conferred on them by the constitution and laws of the states. If the tribunals of the states should refuse, or if the laws of the state should forbid them, to entertain a suit instituted by the bank, where in the constitution of the United States, is the power to be found, authorizing congress to compel the state courts to exercise jurisdiction? We would hesitate to pronounce, that the national government possesses such a power. We do not mean to say, that the state courts ought not, or cannot, entertain jurisdiction in suits between the bank and the citizens. We think they may do so, either with or without an express provision in the acts of congress; not as a matter of constitutional obligation, but upon those principles of comity, which authorize the courts of every civilized state to administer law and justice to suitors, although not citizens of the state. Whether congress possesses the power to coerce the state courts to entertain jurisdiction or not, we are satisfied, that an attempt to exercise such a power would justly give greater cause for alarm than the vesting of concurrent jurisdiction in the state and federal tribunals.

If it was competent for congress to create this corporation, to confer upon it the rights and powers, and to require of it the performance of the duties, expressed in the charter, it was clearly competent to submit these rights, powers and duties to the decision of the national tribunals. The powers of judicature must, of necessity, in every well organized government, be co-extensive with the powers of legislation. A government without the power of interpreting and enforcing its own regulations would not only be feeble, but must become contemptible. The framers of our admirable constitution, therefore, wisely extended the judicial power of the Union, to all cases arising under the constitution and laws of the United States. The only difficulty is, in ascertaining whether this be a case of that character. It was said in argument for the defendant, that the words "arising under" must be understood to mean "growing out of, created by, or

brought into being by," the laws of the United States. Let the case before us be tested by this definition. The bank itself, its capacity to purchase the bill of exchange, its rights of property in the bill, and the sum of money therein expressed, all grew out of, were created and brought into being by, the act of congress creating the corporation. But for the act of congress, the cause before us could not have existed. It is palpable, that when the case involves the very right of property given and created by an act of congress, as in this instance, it is "a case arising under the constitution and laws of the United States." We are of opinion that, to bring the case within the judicial power of the United States, it need not be of an unmixed character. If the principal right, the right of property in the subject in controversy is given, or created, by an act of congress, made in pursuance of the constitution, it is sufficient. In this case, the principal right, the general right, of ownership in the bill of exchange, and the money for which it was drawn, is of that character. The interest and damages demanded on account of the protest are but incidents, that may follow the principal, as a shadow follows the substance, and may well be regulated by the lex loci. A distinction was attempted, at the bar, between the cases in which a general right is created by act of congress, and those in which a penalty, debt, or specific thing, or damages, are expressly created and given by laws of the United States; and it was insisted, that the latter class only ought to be regarded as cases arising under the laws of the United States. That the distinction attempted is wholly untenable is evident. The constitution uses the same expression, and in the same sentence, in relation to cases arising under the constitution, the laws, and treaties. The distinction can, in no instance, be applicable to a case arising under the constitution, and very rarely, if ever, to one arising under a treaty. The same words ought to receive the same interpretation; and where the distinction cannot possibly be applied to the constitution, it ought not to the laws. It was admitted, by one of the defendant's counsel, and we think, rightly, that the bank could, constitutionally, be authorized, by congress, to sue in the circuit courts of the United States, for a trespass committed upon its corporate rights or property. We are unable to perceive any well founded distinction between a suit brought to redress an injury done to the corporate rights in possession, and suits to redress injuries to the corporate rights in action. They are alike intended to maintain, protect, and enforce the rights of the corporation, conferred upon it by its charter.

A numerous train of decisions in the supreme court tend to prove, and indeed it was conceded in argument, that if this case had been brought originally in a court of the

state, it would have been a proper subject of revision and adjudication in the supreme court of the United States, in the exercise of its constitutional appellate jurisdiction. But it was insisted, with great earnestness that it was not competent for congress to give original jurisdiction of the case to the subordinate federal tribunals. If we have taken a correct view of the constitution, this argument is not maintainable. The judicial power granted by the constitution, is granted to the United States; it is declared to extend to certain enumerated cases; and it is vested in the "supreme court, and such inferior courts as Congress shall, from time to time, ordain and establish." "In all cases affecting ambassadors, other·public ministers and consuls, and those in which a state shall be a party, the supreme court shall have original jurisdiction." "In all the other cases before mentioned, the supreme court shall have appellate jurisdiction, both as to law and fact, with such exceptions, and under such regulations, as congress shall make." As the constitution gives to the supreme court original jurisdiction in two only of the eleven cases enumerated in that instrument, it may be asked, was it the intention of the framers of the constitution to leave the residue of the original jurisdiction to be exercised exclusively, by the courts of the states? If so, the power of congress to ordain and establish inferior courts was worse than futile. The authority to establish inferior courts includes authority to confer on them judicial power. If congress can create inferior courts, and give them original jurisdiction, in any case of the nine enumerated cases to which the judicial power of the United States extends, and in which the supreme court has appellate jurisdiction only, it is equally competent for congress to clothe such inferior courts with original jurisdiction in all the other enumerated cases, or in so many, and so much of each of them, as from time to time shall be demanded by the exigencies of the government and the wants of the people. This case being one, in our opinion, "arising under" a law of the United States, decided by the supreme judicial tribunal of the nation, to be made pursuant to the constitution, our judgment is, that this court has jurisdiction, and that the demurrer ought to be overruled.

We have to regret, that we have had but few judicial decisions or former precedents to enlighten our path. We have been compelled to explore our way, chiefly, by the lights furnished by the constitution and laws themselves, and the general principles of law and reason. In the performance of this delicate and arduous task, we have received great assistance from the arguments we have heard from the bar, on both sides; and we shall be happy if we have been enabled to come to a conclusion as satisfactory to an enlightened and impartial community as it is to our own judgments and consciences.