In re CILLEY.

(Circuit Court, D. New Hampshire. December 11, 1893.)

No. 400.

1. REMOVAL—CASES REMOVABLE.
    The right of removal is restricted by section 2 of Acts 1887–88 to the classes of cases in which original jurisdiction is given by section 1.
2. SAME—DIVERSE CITIZENSHIP.
    The right of removal on the ground of diverse citizenship is limited by Acts 1887–88 to suits of a civil nature "at common law or in equity."
3. SAME—PROCEEDINGS TO PROBATE WILLS.
    A proceeding to establish and probate a will is not a suit "at common law or in equity," and is therefore not removable under Acts 1887–88.

Petition of Horatio G. Cilley for the removal of a probate appeal on the ground of local prejudice. Petition dismissed.

For prior reports relating to this litigation, see 46 Fed. 892, and 1 C. C. A. 522, 50 Fed. 337.

Statement by ALDRICH, District Judge:

This cause was before the circuit court at the May term, 1892, (COLT, Circuit Judge, and ALDRICH, District Judge, sitting) upon a rehearing of a motion to remand to the state court, which had previously been denied. The removal was on the ground of diverse citizenship, and within the limit in which a party may remove a proper cause as a matter of right, and was subsequent to the act of 1887. The proceeding removed was a probate appeal from the decree of the probate court in the county of Merrimack, and state of New Hampshire, allowing and establishing a certain instrument as the last will and testament of one Matilda P. Jenness, wherein the contestant (which is the petitioner) alleged undue influence as ground of appeal, and issues of fact thereon were framed for the jury in this court; and upon reargument and reconsideration the cause was remanded, the court, at the August term, announcing its conclusion orally, in substance, as follows, (COLT, Circuit Judge, and ALDRICH, District Judge, concurring:)

"The general question is whether the decree of the probate court admitting the will to probate shall be affirmed, and the immediate question comes, upon a rehearing ordered by the court, under the motion to remand on the ground that such proceeding was not removable, and that this court therefore has no jurisdiction. Upon the former argument of the question involved in the motion to remand, which was denied, due consideration was not given to the effect of section 2 of the acts of March 3, 1887, and August 13, 1888. Upon reargument and reconsideration, we are of opinion that the acts referred to are restrictive in respect to the right of removal, and that section 2, under reasonable construction, operates to narrow or withdraw such right in certain classes of cases. Judicial decision since 1887 sustains this view. If we were to assume, for the purpose of determining this question upon reargument, that prior to March 3, 1887, proceedings to establish wills were removable after reaching such a stage as to be termed a 'suit' or 'controversy' within the meaning of the older statutes, we should still be of opinion that such right did not exist in this cause at the time of the removal, for the reason that the effect of section 2 of the acts referred to was to withdraw such right in this class of cases. In determining this question it is not necessary at this time, and would not be useful, to refer to reasons which prompted this restrictive legislation. It is evident, however, if the right of removal ever existed in will cases of this character, that congress, upon such considerations of public policy, convenience, economy, and a proper administration of justice in such affairs as seemed to it controlling, intended to withdraw such right, and leave this class of probate business to the courts of the states; and we have, therefore, no hesitation in accepting such legislation as intended to settle this mooted question of jurisdiction against the right of removal, at least in proceedings of this character."

All prior orders denying the motion to remand were vacated, the motion was granted, and the cause remanded to the state court. At the time this conclusion was announced the court intimated its purpose to file an opinion stating its reasons more at length. The remand was distinctly upon the ground that the federal court had no jurisdiction of the subject-matter involved.

William L. Foster and Harvey D. Hadlock, for petitioner.
Streeter, Walker & Chase and Bingham & Mitchell, for executor.

Before COLT, Circuit Judge, and ALDRICH, District Judge.

ALDRICH, District Judge, (after stating the facts.) The party aggrieved is now before the court upon petition for removal upon the ground of local prejudice, and, the former remand being for want of jurisdiction of the subject-matter, presents no new question. But, in view of the magnitude of the case, the practical importance of the question, and the fact that learned counsel have pursued the supposed right of removal with unusual earnestness and apparent confidence, we have thought best to carefully re-examine the jurisdictional question in the light of further argument, and to state our reasons at length.

We will first dispose of the position taken by the petitioner on reargument, that the right of removal exists under article 3, § 2, of the constitution of the United States, and cannot, therefore, be abridged by congress or denied by the court. This position is not tenable. The constitution declares the lines within which congress may confer jurisdiction, but the ground and limit of actual jurisdiction to be exercised by the courts are to be found in the acts of congress, and not in the constitution. It is not necessary to inquire as to the extreme limit of the constitutional scope of judicial power. Within its scope, whatever that may be, congress may confer jurisdiction, and so much of the constitutional grant of judicial power as is not bestowed upon the federal courts by legislative provision remains dormant. In other words, congress is to define and describe to what extent the judicial power is to be exercised by the federal courts. McIntire v. Wood, 7 Cranch, 504; Kendall v. U. S., 12 Pet. 524, 616; Cary v. Curtis, 3 How. 236, 245; Bank v. Roberts, 4 Conn. 323; Bank of U. S. v. Northumberland Bank, Id. 333; Turner v. Bank, 4 Dall. 10; Ex parte Cabrera, 1 Wash. C. C. 235; Sheldon v. Sill, 8 How. 441, 449; U. S. v. Haynes, 29 Fed. 691, 696. There is authority to the point that the purpose of the act of 1875 was to make the jurisdiction of the circuit court coextensive with the constitutional grant of judicial power, except in cases in which the supreme court had exclusive jurisdiction, (Insurance Co. v. Champlin, 21 Fed. 85, 89; Sawyer v. Parish of Concordia, 12 Fed. 754;) but, however this may be, such was not the purpose of the acts of 1887–88.

There is a wide difference between the removal provisions of the act of 1875 and the acts of 1887–88, as will be seen upon examination. The act of March 3, 1875, provided, through section 1:

"That the circuit courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature at common law or in equity, where the matter in dispute exceeds," etc.

Section 2 provided:

"That in any suit of a civil nature, at law or in equity, now pending or hereafter brought in any state court, where the matter in dispute exceeds, etc. * * * or in which there shall be a controversy between citizens of different states, * * * either party may remove said suit into the circuit court of the United States for the proper district. And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states," etc.

It will be observed that the second section, which authorizes removal, is broader than the first section, which grants original cognizance upon the circuit courts; and herein lies the difference between the acts of 1875 and 1887. It is manifest that under the act of 1875 suits or controversies, not originally cognizable in the circuit court, might ripen into a suit removable under section 2. It will be seen that in describing suits of a civil nature at law or in equity, removable under section 2, there is no reference to the preceding section, and there is, therefore, in section 2 no reference to the suits of a civil nature, at common law or in equity, described in section 1. In other words, under section 2 there is no reference to *common-law suits or proceedings in equity*. And it will be further seen that in the last part of section 2 the provision is, "When in any suit mentioned in this section there shall be a controversy," etc. The removability, therefore, under the act of 1875, was to be determined upon the force of section 2, without any reference to the jurisdictional grant of section 1, or to the common-law phrase used therein. Under this section there was strong ground for holding that original jurisdiction was not the test of removability, and that any controversy between citizens of different states, which had taken the form of a suit of a civil nature at law or in equity, might be removed; and the weight of authority unquestionably sustains this view. But the present jurisdiction of this court depends upon the acts of 1887-88, and not upon the act of 1875. We must, therefore, look to the acts of 1887-88 for the purpose of determining whether jurisdiction exists to administer justice in a probate proceeding of this character.

Sections 1 of the acts of 1875 and 1887-88 are, in substance, the same; but, as has been observed, there is a wide difference between section 2 of the acts of 1887-88, which authorizes removals, and section 2 of the act of 1875. Section 2 of the acts of 1887-88 first provides:

"That any suit of a civil nature, at law or in equity, arising under the constitution or laws of the United States, or treaties made, or which shall be made, under their authority, of which the circuit courts of the United States are given original jurisdiction by the preceding section," may be removed.

It next provides:

"That any other suit of a civil nature, at law or in equity, of which the circuit courts of the United States *are given jurisdiction by the preceding section*, and which are now pending, or which may hereafter be brought, in any state court, may be removed into the circuit court of the United States for the proper district by the defendant or defendants therein, being non-residents of the state."

It would seem that the first two clauses of section 2 contain all the jurisdictional grant embodied in the second section, and describe and limit the same, and in both instances refer directly to suits of a civil nature pending in the state courts of which the federal courts *are given jurisdiction by the preceding section.* It is true that section 2 further provides that:

"When in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove. * * *"

—And this is followed by the further clause that, where a suit is now pending, or may hereafter be brought, it may be removed on the ground of local prejudice, etc. But it does not seem to us that this enlarges the limit stated in the second clause, for the reason that there are no suits "mentioned in this section," aside from those embodied in the first and second clauses of the section, in both of which reference is made, as has been observed, to the preceding section; and we must assume that the third clause of section 2, which gives the right of removal to one of several defendants, and the fourth clause, which gives the right of removal of a suit on the ground of local prejudice, have reference to cases included within the first and second clauses. Malone v. Railroad Co., 35 Fed. 625, 626; In re Pennsylvania Co., 137 U. S. 451, 454-456, 11 Sup. Ct. 141. In other words, the third clause gives the right of removal to one of several defendants, and the fourth clause gives the right of removal on the ground of prejudice and local influence; or, in other words still, the first and second clauses of section 2 define the classes of cases which may be removed, while the third and fourth clauses merely give the right of removal in the same class of cases to particular parties and upon particular grounds. The only enumeration of removable cases is in the first part of the section, and it is reasonable to assume that, if it was intended to enlarge the classes in the latter part of the section, which gives the right of removal to one of several defendants as a matter of right, and to all at any time before trial, if local prejudice is established, it would have given some intimation of the particular cases which were intended to be covered, and which were not included within the general terms embodied in the first and second clauses.

We are not unmindful of the fact that there is contrary judicial expression in some of the circuits; but, having in mind that this distinct point has been determined by the supreme court in the case last mentioned, and that the statute of 1887 was "mainly designed for the purpose of restricting the jurisdiction of the circuit courts of the United States," (Smith v. Lyon, 133 U. S. 315, 320, 10 Sup. Ct. 303,) and, as has been often declared by the supreme court, was "to contract, not to enlarge, the jurisdiction," (Shaw v. Mining Co., 145 U. S. 444, 449, 12 Sup. Ct. 935; In re Pennsylvania Co., 137 U. S. 451, 454, 11 Sup. Ct. 141,) "to restrain the volume of litigation pouring into the federal courts, and to return to the standard of the judiciary act," (Fisk v. Henarie, 142 U. S. 459, 467, 12 Sup. Ct. 207,) we are not left in doubt as to the proper construction of the section under con-

sideration. And it follows as a result that, as that part of section 2 which defines and limits the removable causes makes reference to the jurisdiction given by the preceding section, we must look to the preceding section for the purpose of ascertaining our authority in respect to the case now before us. Through that part of section 1 which is material to this case we find that congress has provided that the circuit courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature *at common law or in equity*, in which there shall be a controversy between citizens of different states, in which the matter in dispute exceeds $2,000.

There is no question in the case before us as to the fact that a controversy exists having some of the forms of a suit between citizens of different states, and that the sum involved exceeds the statutory limit. The only question, therefore, to consider is whether the proceeding is either a suit of a civil nature at common law or in equity, (Reed v. Reed, 31 Fed. 49,) within the meaning of the act of congress which describes and limits the jurisdiction of circuit courts; and upon this general question it becomes necessary for us to inquire—First, as to the sense in which the term is used; and, second, as to the nature of the proceeding. As said in the court of appeals in this circuit in Richmond v. Atwood, 5 U. S. App. 151, 2 C. C. A. 596, 52 Fed. 10, 22: "We must assume that congress used the term * * * in its common and well-understood sense, and as intending the line of distinction accepted and interpreted by the federal courts." We may also look to the system of procedure as understood and practiced in England, from which we borrow, so far as the same is not repugnant to our institutions. It is not to be presumed that congress, in limiting or describing the judicial power to be exercised under the constitution, used these words in any narrow or local sense; but, on the contrary, in the broad common-law sense in which equity and common-law jurisprudence is understood in this country and in England.

In statutes where congress expressly enumerates, such enumeration is, of course, controlling; but where this course is not adopted, and common-law terms and phrases are employed, then the intention is to be ascertained in the light of the system to which reference is made. It may be within the discretion of congress, under the constitutional grant of judicial power, to confer jurisdiction over a controversy of this character. But has congress done this? Was it so intended by the act of 1887? The intention of congress is the rule of construction, and it is only where the intention is clear that courts will enlarge their jurisdiction, and include a class of cases over which jurisdiction has not theretofore been exercised, and especially would this be so where federal interference would be against public policy, the common understanding for a hundred years, and when the assumption of jurisdiction would seriously interfere with the prompt administration of justice in the courts of the state. Probate proceedings to establish wills have never, in England or this country, been distinctively classed on either the common-law or equity side of jurisprudence; and neither courts of law nor equity,

exercising their functions under what is known as the common-law and equity system of jurisprudence, have interfered, except on special and exceptional grounds, like restoring a lost will, construing doubtful provisions of wills already established, or by auxiliary proceedings to enjoin, etc. Mr. Justice Bradley, in the case of Broderick's Will, 21 Wall. 503, forcibly states the general rule that courts of equity will not interfere with the probate of wills:

"Whatever may have been the original ground of this rule," he says,—page 509,—"(perhaps something in the peculiar constitution of English courts,) the most satisfactory ground for its continued prevalence is that the constitution of a succession to a deceased person's estate partakes in some degree of the nature of a proceeding in rem, in which all persons in the world who have any interest are deemed parties, and are concluded as upon res judicata by the decision of the court having jurisdiction. The public interest requires that the estates of deceased persons, being deprived of a master, and subject to all manner of claims, should at once devolve to a new and competent ownership; and, consequently, that there should be some convenient jurisdiction and mode of proceeding," etc.

Again, he says, (page 517:)

"On the establishment or nonestablishment of the will depended the entire right of the parties, and that was a question entirely and exclusively within the jurisdiction of the probate court. In such a case a court of equity will not interfere, for it has no jurisdiction to do so."

Recurring to the English system, it will be seen that the high court of chancery at an early day declared that it had no jurisdiction to determine the validity of a will, either of real or personal estate. Jones v. Jones, 3 Mer. 161; Jones v. Frost, Jac. 466; Ryves v. Duke of Wellington, 9 Beav. 579. The last case is of peculiar force, for the reason that it involved the will of George III., and it was said that, looking at the origin of the jurisdiction of the ecclesiastical court in matters of probate, it was clear that that court could have no jurisdiction of the will of a sovereign, and that there was, therefore, an unusual call for the interposition of chancery relief. The Duke of Wellington put in a general demurrer "for want of equity, and for that the matters contained in the bill are not cognizable by this court." Lord Langdale, master of the rolls, in disposing of the demurrer, which was sustained, observed that:

"It is not denied that in ordinary cases this court has no jurisdiction to determine upon the validity of a will of personal estate, and that in all cases in which parties apply for the construction of a will, or for payment of legacies under a will, this court proceeds only on the foundation of a will proved in a court of competent jurisdiction. * * * I do not think that it is necessary, or that it would be useful, on this occasion, to trace the history of the jurisdiction exercised by other courts in the establishment of the validity of testamentary instruments, or the history of the jurisdiction of this court in making decrees for the payment of debts and legacies, and for taking the accounts which are ancillary to those objects. The court does interfere for the protection of property pendente lite for probate; * * * but relief, under a will produced, is given only in cases where grants have been made of probate or of letters of administration. * * * It was argued that, if no remedy can be obtained here, the law of England does not afford any remedy for an alleged wrong such as is stated on this record. I may observe that the absence of a remedy for a supposed wrong in another place is not, of itself, any reason for this court assuming a jurisdiction on the subject."

In conclusion the master of the rolls says:

"I am of opinion that there is nothing to take this case out of the ordinary rule, which requires a will to be proved in a proper court before relief is given under it in this court."

In a recent case in the chancery division, (Pinney v. Hunt, 6 Ch. Div. 98,) decided since the judicature act of 1873, which confers like jurisdiction on all divisions, the question was under discussion as to whether chancery should grant relief, and Sir George Jessel, master of the rolls, said:

"The jurisdiction I am asked to exercise is that of granting probate. * * * Now, it does appear to me to be exceedingly inconvenient for many reasons that any judge except a judge in the probate division should grant probate. In the first place, a question of a disputed will can be much better tried before a judge who has had experience in such matters, and in a division in which all the proceedings incident to the grant of probate, such as citations, and so forth, are accustomed to be taken, than before a judge who has had no such experience, and in a division not possessing the requisite machinery for dealing with such business."

It must be borne in mind that we are examining this question not for the purpose of ascertaining whether a will proceeding, when issues are framed for the jury under the New Hampshire practice, takes some of the forms of a suit at law or proceeding in equity, but for the purpose of ascertaining whether, as a matter of substance, proceedings to establish a will so clearly belong to "suits of a civil nature at common law or in equity" as to justify the conclusion that congress intended to confer jurisdiction through the use of the general common-law terms employed, and upon this question there would seem to be no doubt.

It probably will not be contended that a will contest is a suit of a civil nature at common law, for the reason that an action at law to prove and establish a will is an unknown proceeding. In proceedings to establish wills there is no writ or summons or pleadings. And it must also be assumed that such proceedings are not suits in equity, within the meaning of section 1 of the judiciary acts. At the time of the adoption of the constitution, as well as at the time of the enactments of the various judiciary acts thereunder, the probate of wills was distinctively understood as belonging to the ecclesiastical and probate courts in England, and to the probate courts in this country. Jurisdiction to probate wills and grant administration in the provinces was withdrawn from the spiritual courts and conferred upon probate courts as early as 1687, (2 N. H. Provincial Papers, pp. 16, 17; 3 Colonial Records Conn. pp. 423, 424; Acts and Laws Province of N. H. 1696-1725, pp. 5, 102-104; Provincial Laws 1771, pp. 6, 106, 107;) and in New Hampshire, previous to the adoption of the constitution, the appeal was to the governor and council. When the appeal was to the governor and council there was no trial of issues by jury, and it was nearly 50 years after the adoption of the constitution and the transfer of the appellate jurisdiction to the court as the supreme court of probate that such right was created in will cases, and then it was left in the discretion of the court; and in those respects will proceedings were not suits of a civil nature at common law. See Smith, (N. H.) 450; Patrick v. Cowles, 45

N. H. 553, 555; Act 4, Geo. I., Prov. Laws, pp. 20, 22; Higbee v. Bacon, 11 Pick. 423; Stearns v. Fiske, 18 Pick. 27; Wood v. Stone, 39 N. H. 575. See, also, Laws N. H. 1830, pp. 374, 375; Laws N. H. 1792, p. 39; Laws N. H. 1815, p. 202, § 15; Id. p. 206, § 2; Id. p. 223, § 4; Laws N. H. 1830, p. 348, § 9. Probate jurisdiction in this country, and ecclesiastical and probate jurisdiction in England, as a separate and distinct branch of the law, have had as distinct and definite a meaning as common-law or equity jurisprudence or as admiralty jurisdiction, and a construction which would force proceedings of this character within the common-law terms used by congress would be contrary to the spirit of the admonition of Chief Justice Marshall, who, in speaking of the power intrusted by the constitution and laws of the United States to federal courts, said (Fisher v. Cockerell, 5 Pet. 248, 259) that "we must tread the direct and narrow path prescribed for us."

We have been forcibly admonished by learned counsel that we should give "clear and definite answer" to certain points made in the last printed argument submitted, and of our duty not to shrink from jurisdiction which the constitution has conferred in controversies which arise between citizens of different states; but counsel should ever bear in mind the view expressed by the late Chief Justice Chase in Ex parte McCardle, 7 Wall. 515, that "judicial duty is not less fitly performed by declining ungranted jurisdiction than in exercising firmly that which the constitution and the laws confer."

The supreme court has repeatedly and uniformly disclaimed any jurisdiction over proceedings to probate or establish wills. In Tarver v. Tarver, 9 Pet. 174, 180, decided in 1835, it was held that a bill in equity could not be sustained on the ground that the probate was void, that an original bill would not lie for that purpose, and that the remedy was by an appeal according to the provisions of the law of Alabama. The case of Fouvergne v. City of New Orleans, 18 How. 470, was a bill in equity setting forth undue influence and fraud in the execution of a will, and in procuring a sham decree of probate, and it was expressly said that the decree was to be treated as the judicial act of a court of competent jurisdiction; that courts of the United States have no probate jurisdiction, and must receive the sentences of the courts to which the jurisdiction over testamentary matters is committed, as conclusive of the validity and contents of a will; and that an original bill cannot be sustained upon an allegation that the probate of a will is contrary to law. And in the more recent case of Ellis v. Davis, 109 U. S. 485, 494, 3 Sup. Ct. 327, the supreme court reviews the question of equity jurisdiction both in this country and in England, and distinctly affirms the case of Broderick's Will, supra, in the following unmistakable language:

"It is contended, however, for the appellants," says Mr. Justice Matthews, "that the bill ought to have been maintained for the purpose of decreeing the invalidity of the will of Mrs. Dorsey and annulling the probate, so far, at least, as it gave effect to the will as a muniment of title. It is well settled that no such jurisdiction belongs to the circuit courts of the United States, as courts of equity; for courts of equity as such, by virtue of their general authority to enforce equitable rights and remedies, do not admin-

ister relief in such cases. The question in this aspect was thoroughly considered and finally settled by the decision of this court in the case of Broderick's Will, 21 Wall. 503. It was elaborately considered and finally determined in England by the house of lords in the case of Allen v. McPherson, 1 H. L. Cas. 191."

In a still more recent case in the sixth circuit (Ball v. Tompkins, 41 Fed. 486) the court undertakes to state the controversies respecting estates over which courts of equity exercise jurisdiction in England and this country, and expressly excludes from equity the probate of wills. Simmons v. Saul, 138 U. S. 439, 459, 460, 11 Sup. Ct. 369, was a suit in equity to set aside letters of administration upon a succession, and the supreme court, applying to letters of administration the doctrine established in the case of Broderick's Will, that courts of probate have exclusive jurisdiction, affirmed the decree of the circuit court dismissing the bill, for the reason that a court of equity will not entertain jurisdiction on the ground of fraud to set aside the granting of letters of administration.

With a view of ascertaining whether proceedings to establish wills are commonly classed and known as suits at common law or in equity, and therefore such as could be originally brought in the circuit courts of the United States under the act of congress conferring "original cognizance, concurrent with the courts of the several states," we may well look to the decisions of the state courts regulating their own jurisdiction. In Vermont, courts of probate are treated as having exclusive jurisdiction of the settlement of estates to the same extent that jurisdiction of matters of contract and tort is given to the common-law courts, and courts of chancery disclaim jurisdiction over the subject-matter of probate, (Adams v. Adams, 22 Vt. 50; Boyden v. Ward, 38 Vt. 628, 632;) and courts of law, as such, exercise only the appellate jurisdiction created by statute, (Holmes v. Holmes' Estate, 26 Vt. 536,) asserting no general jurisdiction to hear and determine the merits, (Goff v. Robinson, 60 Vt. 633, 15 Atl. 339; Angus v. Robinson's Adm'r, 62 Vt. 60, 19 Atl. 993.) In Maine the courts early expressed a like understanding, and forcibly re-enforced such view (Given v. Simpson, 5 Greenl. 303, 307) upon the ground that a system peculiar in itself was by law established for regulating and enforcing the settlement of estates by the judge of probate, and that the exercise of equity jurisdiction in such cases would disturb and derange the system, and for these reasons the court signified its disinclination to extend its equity jurisdiction by construction. "It is enough," says the court, "for us to take cognizance of those cases which are clearly embraced by the language which the legislature has used in the delegation of our equity powers." In Massachusetts, even on appeal, courts of equity cannot exercise equity jurisdiction over the subject-matter, (Grinnell v. Baxter, 17 Pick. 383,) and as to proceedings in the probate court, when, upon the face of the papers, such court has jurisdiction, the supreme court has no equity jurisdiction, even if the same was void for fraud, (Jenison v. Hapgood, 7 Pick. 1; Peters v. Peters, 8 Cush. 529, 536; Wolcott v. Wolcott, 140 Mass. 194, 3 N. E. 214.) In Rhode Island, courts of equity, as such, decline to interfere with the appellate jurisdiction exercised by the supreme

court of probate. It would be inferred from Blake v. Butler, 10 R. I. 133, that courts of equity exercise concurrent statutory jurisdiction with the supreme court of probate; but we have not been able to discover anything in the decisions by the Rhode Island courts which would indicate that the courts of equity classed probate proceedings as within original equity jurisdiction. See, also, recent case of Mitchell v. Hughes, (Colo. App.) 32 Pac. 185; Pom. Eq. (Ed. 1881,) §§ 77, 171, 1158, as well as section 1154, and note, where jurisdiction exercised by the courts of equity of the various states is discussed. Looking to New Hampshire, from whence this proceeding comes, we find that the probate courts are created by statute, and exercise distinct and exclusive jurisdiction over proceedings to establish wills; that the remedy of parties aggrieved by the decree of a judge of probate establishing a will is not by common-law suits or suits in equity, but by statutory appeal to the supreme court of probate, which is designated as such, and where the case "is to be tried in this, the supreme court of probate, according to the principles adopted and the rules applied for the trial of the same questions in the probate court." Boardman v. Woodman, 47 N. H. 120, 132; Laws N. H. 1815, p. 206, § 2; Id. p. 223, § 4; Laws N. H. 1830, p. 348, § 9. And, the decree not being vacated by the appeal, the adjudicated will remains established until and unless the decree is reversed by the supreme court of probate. In New Hampshire there is no common-law or equity suit for the establishment or disestablishment of wills, the only jurisdiction in this respect being statutory and probate, and, as such, is a branch of jurisprudence distinct from law and equity as administered in that state. As a result, a decree admitting a will to probate remains as a decree of a court having exclusive jurisdiction, (Poplin v. Hawke, 8 N. H. 124, 126, 127; Strong v. Perkins, 3 N. H. 517, 518; Barstow v. Sprague, 40 N. H. 27, 30, 31; Ayer v. Messer, 59 N. H. 279, 280; Symmes v. Libbey, Smith, [N. H.] 137,) and is binding upon the world, unless some party aggrieved, within the statutory limit as to time, successfully pursues his only remedy to vacate the same, which is statutory, appellate, and local. While such a decree stands in the probate court, and while a proceeding is pending in the supreme court of probate to the end, if successful, of vacating such a decree, the petitioner seeks to remove the same to the federal court, on the ground that by virtue of such appeal it has become a suit or controversy within the acts of congress authorizing removal.

We cannot determine this question by the application of that large class of cases like Boom Co. v. Patterson, 98 U. S. 403, 406, which liberally construe the words "suit" or "controversy," used in the removal acts of the older statutes. We look upon the broad provisions of the second section of the act of 1875, and the decisions thereon, as to the meaning of the words "suit" and "controversy," as superseded by the second section of the act of 1887 and the decision of the supreme court in Re Pennsylvania Co., 137 U. S. 451, 454–456, 11 Sup. Ct. 141, where it is distinctly held (and on careful consideration, as Mr. Justice Bradley observes) that the cases described in the third and fourth clauses of section 2 are

only special cases comprised in the preceding clauses of the same section; and the preceding clauses, for their description and limit, referring to suits of a civil nature at common law or in equity named in section 1, over which the federal courts have original cognizance, concurrent with the courts of the state, we must look to that section alone for jurisdictional warrant. And in view of the common understanding as to the meaning of the phrase, "suits of a civil nature at common law or in equity," in England and in the various courts of this country, state and federal, we have no doubt as to our duty to adopt a construction which excludes probate proceedings to establish wills.

The case of Reed v. Reed, 31 Fed. 49, was a will case, and contains a satisfactory and logical discussion by Judge Welker of the provisions of the statute which we are now considering, and the result reached is that since the act of 1887 federal courts have no jurisdiction of a proceeding to contest the validity of a will in a proceeding coming from the state of Ohio. In the well-considered case of Yuba Co. v. Pioneer Gold Mining Co., in the ninth circuit, decided in the same year, and reported 32 Fed. 183,—a case in the circuit court,—in which Mr. Justice Field, Circuit Judge Sawyer, and District Judge Sabin all sat and concurred, it was stated as clear in the minds of the judges sitting that by the act of 1887 "congress only intended to authorize the removal of such cases as could be brought originally in the United States courts and in the court to which the removal is to be made."

It is not suggested in the case before us, nor could it be claimed with any show of reason, that a cause to prove and establish a will could be originally brought in the federal courts.

The adoption of the construction that the common-law term employed in section 1 of the statute describes and limits the grant of judicial power and the cases removable under section 2 does not involve the assumption that federal jurisdiction in law and equity is thereby limited to remedies afforded by such courts at the old common law; on the contrary, it is understood that jurisdiction extends beyond and includes the enlarged remedies under statutory, common-law, and equity expansion, and such jurisdiction as is ordinarily exercised by common-law courts and courts of equity in the state from which the cause may come. Railroad Co. v. Whitton, 13 Wall. 270, 287; Denneck v. Railroad Co., 103 U. S. 11; Ellis v. Davis, 109 U. S. 485, 497, 3 Sup. Ct. 327; Gaines v. Fuentes, 92 U. S. 10, 20, 21. But applying the statute in this modern and broader view to a state like New Hampshire, where the common-law and equity courts, as such, are not clothed with statutory jurisdiction in respect to the probate and establishment of wills, and where such matters are exercised exclusively by the probate courts, such proceedings are not included within its terms or spirit. Moreover, in construing a statute of this character, and ascertaining the intent of congress, if the intention were doubtful, we might and ought to consider the common understanding, as well as the consequences which would result,—which view would best harmonize with the theory of our government, and tend in the highest de-

gree to promote the administration of justice,—and upon this phase of the question the reasons are many and weighty why probate matters should be left with the state courts. It is not necessary for us to enlarge upon the reasons of public policy, economy, convenience, speed, and the process necessary for the adjustment of such affairs, stated in the various decisions in this country and in England during the past 100 years as reasons for leaving such proceedings with the ecclesiastical and probate courts free from the interference of courts of law and equity, except when exercising jurisdiction in aid thereof.

There is another rule of construction which applies with force, and that is this: that the express term, "suits of a civil nature at common law or in equity," used for the purpose of describing classes, implies a negative to the exercise of jurisdiction over any other class of cases. The enumeration includes only suits at common law and in equity, and therefore excludes all other classes, upon the well-known maxim, "Expressio unius est exclusio alterius," as well as upon the rule of construction adopted by the supreme court respecting its own appellate powers that, while such powers are given by the constitution, they are limited and regulated by statutes, (Durousseau v. U. S., 6 Cranch, 307,) and that, congress having described the jurisdiction, such description implies a negative to the exercise of such appellate power named in the constitution as is not comprehended within the acts of congress, (Id. 314; U. S. v. Young, 94 U. S. 259; Ex parte Vallandigham, 1 Wall. 251; Railroad Co. v. Grant, 98 U. S. 401.)

In conclusion, upon this branch of the case, we must remark that we are quite content to act upon the supposition that when congress intends to clothe the federal circuit courts with probate jurisdiction—a jurisdiction which the profession and the people since the organization of the government have looked upon as properly and rightfully residing exclusively with the probate courts of the states—it will not leave the matter to doubtful and dubious construction, but will convey its intention through clear, apt, and unmistakable language.

Original and unquestionable jurisdiction will be jealously guarded; but there is a broad distinction between cases within the provisions of the federal statutes as to original jurisdiction and cases brought before the courts under the removal provisions thereof. In the removal class there is no fundamental right involved. The right of removal is a privilege which congress may confer, limit, or withhold. The constitutional grant of judicial power was intended as a reasonable safeguard, among other things, against local prejudice; but congress has never undertaken, contrary to the theory of common law and equity, to confer jurisdiction so broadly as to interfere with the proof and probate of wills, which, in a sense at least, are local proceedings in rem, over which there is no common-law jurisdiction. It was with regard to public policy, convenience, economy, and the local character of this class of affairs that in England and in this country the broad and somewhat elastic chancery jurisdiction has not included controversies relating to the

execution and establishment of wills. It has always been considered that the necessary and reasonable speed and convenience referred to by Mr. Justice Bradley in the Broderick Will Case, supra, were of more importance than the privilege or opportunity for long drawn out legal controversy. The settlement and distribution of estates involve machinery peculiar to probate courts, and the estates are rare where there is no diverse citizenship among the heirs; and in the majority of probate cases, if the petitioner's contention is true, the question as to whether a will should be probated could be removed to the federal courts with all the necessary delays incident to such conditions. It is a matter of no little consequence to the convenience of citizens and the ordinary administration of justice in the state courts, whether proceedings of this character are left with the convenient forum of the state probate courts, where for more than a century it has been understood they belong, or whether they are to be wrested therefrom, and made subject to federal jurisdiction and regulation; and, as has been already observed, it is to be presumed that when the lawmaking power desires to accomplish such a result it will not leave its purpose in doubt. Again, upon the view most favorable to the petitioner, it is at least doubtful whether cases of this class are so distinctively a branch of the common law and equity as to warrant assumption of jurisdiction; and, circuit courts being courts of limited jurisdiction, and having only such powers as are expressly conferred by congress, jurisdiction should clearly appear; and the rule is that where there is doubt the case should be remanded to the state court, where jurisdiction is not questioned.

The petitioner places great stress upon a class of cases like Gaines v. Fuentes and Ellis v. Davis, which put in issue the validity of wills. An examination of these cases will disclose that they are not inconsistent with the repeated declarations of the supreme court that federal courts have no jurisdiction over the probate of wills; and the apparent confusion arises from the fact that the cases either came from the territorial courts or from states where by statute courts of equity have been clothed with jurisdiction to entertain bills to set aside wills on the ground of fraud. Gaines v. Fuentes, 92 U. S. 10, was a direct proceeding to annul a will already established, based upon a local law vesting the ordinary courts with jurisdiction to that end. Mr. Justice Field, in sustaining jurisdiction in that case, reaffirms the doctrine of the case of Broderick's Will, that by the general jurisdiction of courts of equity, as established both in England and in this country, independent of the statutes, a bill will not lie to set aside a will or its probate. "And," he says, (page 21,) "whatever the cause of the establishment of this doctrine originally, there is ample reason for its maintenance in this country from the full jurisdiction over the subject of wills vested in the probate courts, and the revisory power over their adjudications in the appellate courts. But," he says, "that such jurisdiction may be vested in the state courts of equity by statute is there recognized, and that, when so vested, the federal courts, sitting in states where such statutes exist, will also entertain concur-

rent jurisdiction in a case between proper parties;" thus distinctly putting the decision upon the local law conferring equity jurisdiction, and disclaiming that jurisdiction exists over probate proceedings coming from a state where courts of equity are not clothed with such statutory power. And Ellis v. Davis, 109 U. S. 485, 3 Sup. Ct. 327, was a bill in equity to recover property and to set aside a will already established. The court, in its opinion, expressly distinguishes the case then under consideration from those involving proceedings to establish wills, over which it disclaims jurisdiction, and likewise puts the decision sustaining jurisdiction to administer relief in that particular case upon the ground that the law obtaining in the state authorized suits in equity to annul and set aside the probate of a will.

Other cases, like Hess v. Reynolds, 113 U. S. 73, 5 Sup. Ct. 377; Clark v. Bever, 139 U. S. 96, 11 Sup. Ct. 468; Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906,—have been urged as controlling upon this question. We cannot look upon this class of cases, however, as involving the question which we now have under consideration. Hess v. Reynolds was an individual claim presented for allowance in the probate court, and did not involve any question as to the probate of the will. Clark v. Bever was a suit against the administrator, based upon a claim'against the estate, and in no way put in issue the validity of the will or its probate. Byers v. McAuley, in its nature and in the relief sought was somewhat different, in this respect: that it was a bill in equity, originally brought in a circuit court of the United States, to establish a claim against an estate, and for a division of the property; and it was alleged, among other things, that the will was null and void, and that there were two sets of claimants; and the prayer was that the will and the probate be declared void and of no effect; that the administrator be enjoined from disposing of the real estate, from collecting rents therefrom, and that some suitable person be appointed to take charge of it until partition; that a partition be made among the various parties interested, etc. The circuit court undertook, in a measure, to regulate the administration of the deceased person. In the course of the opinion of the supreme court it is stated as a conclusion that the circuit court erred in taking any action or making any decree looking to the mere administration of the estate. It was, however, further held by a majority of the court that the state court, having proceeded so far as the administration of the estate, carries it forward to the time when distribution may be made; in other words, that the debts had been paid, and the estate was ready for distribution, and, no adjudication having been made as to the distributees, that the circuit court might entertain jurisdiction in favor of the nonresident citizens, and determine and award their shares in the estate. Further than that it was not at liberty to go. And that, the federal courts having no original jurisdiction in respect to the administration, the debt or claim thus established must take its place and share in the estate as administered by the probate court.

In seeking to apply the principle involved in the last class of cases to the question under consideration, it must be borne in mind that there is a broad distinction between suits by and against administrators or executors, which may be variously maintained at law or in equity in the state courts, or upon original or removal jurisdiction in the federal courts when diverse citizenship exists, and purely probate proceedings to establish wills in a probate court in a state where such court has jurisdiction exclusive of the courts of law and equity.

Holding these views, we must adhere to our conclusion expressed at the August term, 1892, that the circuit court has no jurisdiction of the subject-matter of the proceeding to establish the Jenness will, and as this petition, in the absence of an express order from this court, did not restore the original cause, but left it in the state court to which it was remanded, it only remains for us to dismiss the petition, and it is so ordered.

COLT, Circuit Judge. I fully concur with Judge ALDRICH in the reasoning and conclusion reached in this opinion.