David LIPPMANN, Plaintiff,

v.

HYDRO-SPACE TECHNOLOGY, INC.,
et al., Defendants.

Civ. A. No. 811–64.

United States District Court
D. New Jersey.

Nov. 25, 1964.

David & Albert L. Cohn, by Daniel Crystal, Paterson, N. J., for plaintiff.

Toner, Crowley, Woelper & Vanderbilt, by Willard G. Woelper, Newark, N. J., for defendants Lithium Corp. of America and Harry D. Feltenstein, Jr.

Gross & Gross, by Albert S. Gross, Hackensack, N. J., for defendants Hydro-Space Technology, Inc., Imperial '400"

National, Inc., Four Hundred Construction Co., L. A. McLaughlin, Bernard Rubinroit, Bernard W. Whitney, John S. Dorf, Robert B. Boyd and Herbert Bruck.

WORTENDYKE, District Judge:

In this action, seeking both money damages and equitable relief, the plaintiff, a resident of the State of Texas, invokes the jurisdiction of this Court by reason of his diverse citizenship from that of the twelve defendants, and the alleged involvement of the jurisdictional minimum required under 28 U.S.C. § 1332(a) (1). The defendants are Hydro-Space Technology, Inc. (hereinafter Hydro-Space), its former president, Imperial '400' National, Inc. (hereinafter Imperial), Imperial's affiliate Four Hundred Construction Company (hereinafter Four Hundred), six former directors of Hydro-Space, the Lithium Corporation of America, Inc. (hereinafter Lithium) and its president, who also had been chairman of the board of Hydro-Space. The voluminous but unverified complaint is in three counts; the allegations of the preceding count or counts having been incorporated by reference in each suc-

ceeding count. All of the counts seek damages from the defendants, collectively, in the sum of one million dollars. In the first count, in addition to monetary damages, the plaintiff seeks various forms of equitable relief.[1]

The first count of the complaint, in summary, makes the following allegations. Plaintiff is and was the holder of 4,000 shares of the common stock of Hydro-Space. Plaintiff bought his shares in July of 1961, at a time when defendant Lithium owned more than 50% of the Hydro-Space stock, and instituted a suit against Hydro-Space and Lithium (infra) in the Chancery Division of the Superior Court of New Jersey in 1962. After the dismissal of that action in December, 1962, Lithium sold its controlling interest in Hydro-Space to Four Hundred at the price (allegedly inflated) of $1.15 a share, payable in installments over two years. Imperial, which controlled Four Hundred, then installed its own directors of Hydro-Space (six of the individual defendants) who disposed of some of its assets, and thereafter, in 1963, directed the corporation to sell, with stockholder approval, all of its remaining assets to Imperial (which con-

---

1. The relief sought by plaintiff in the first count, in addition to monetary damages:

(1) an injunction against further disposition of assets of the defendant Hydro-Space Technology, Inc.;

(2) an accounting of the assets of that corporation already disposed of;

(3) a disclosure of the extent to which the assets of that corporation have been depleted, the present location of its assets and the financial benefits derived by the defendants therefrom;

(4) the appointment of: (a) a custodial receiver *pendente lite*, with authority to take proceedings for the recovery of the assets of the corporation, and (b) a permanent receiver to conduct the business of the corporation under the direction of this Court; (the complaint, filed August 28, 1964, alleges and all parties concede that Hydro-Space was organized on April 19, 1961 and dissolved in May, 1963);

(5) a declaration that the Hydro-Space dissolution proceedings were null and void;

(6) an injunction against the exercise of the corporate franchise of Hydro-

Space by representatives of the corporation other than a receiver of this Court, (relief similar to that sought in (4), (6) and (7) was prayed for by plaintiff and other minority stockholders of Hydro-Space in their verified complaint in a 1962 New Jersey action, which was dismissed, see infra);

(7) a decree that the last board of directors of the corporation be restrained from functioning, and that an examination of the books and records of all defendants be ordered as a means of determining the necessity for the appointment of a receiver;

(8) a declaration that Hydro-Space is insolvent, and an order for the holding of a meeting of its stockholders to formulate a plan for the corporation's reorganization;

(9) a judgment declaring that the sale of the assets of the corporation was in violation of N.J.S.A. 14:14–2, and in fraud of the investing public, including the plaintiff; and

(10) an order compelling compliance by the defendants with the by-laws of the corporation.

trolled Four Hundred, the majority shareholder), in exchange for shares of Imperial, which were then distributed to stockholders of Hydro-Space in exchange for their stock. (Hydro-Space was then dissolved in May, 1963.) Plaintiff claims that he, as a minority stockholder, was damaged by the foregoing conduct, which he alleged constituted a "fraud, conspiracy and cheat" in the following respects: (1) the sale of the 4,000 shares to plaintiff by Lithium was effected by means of misrepresentations, non-disclosure of facts and fraud (all unspecified) in a prospectus dated July 19, 1961; (2) Hydro-Space was managed for the sole benefit of Lithium, its majority stockholder, in that Lithium's losses were assumed by Hydro-Space and its officers and directors had conflicting interests and favored Lithium in managing Hydro-Space, all in violation of the fiduciary duty to minority stockholders; and (3) in the prior litigation in the New Jersey courts, two of the individual defendants (the presidents of Lithium and of Hydro-Space) presented affidavits to the court, that Hydro-Space was in satisfactory condition, which were false and perjurious in that, during the pendency of the New Jersey action, all of the defendants (including the affiants) were engaged in a conspiracy to siphon off the valuable assets of Hydro-Space for their own benefit by curtailing the operation of Hydro-Space and thereafter misrepresenting to its shareholders that it would be in Hydro-Space's best interests to sell its assets to Imperial, and the New Jersey courts relied on those affidavits and dismissed plaintiffs' action, at which time defendants proceeded with and completed their alleged conspiracy by having Hydro-Space sell its assets to Imperial in exchange for Imperial stock "having only a speculative, contingent and uncertain value" which was then distributed to stockholders of Hydro-Space.

Incorporating by reference the allegations of the first count, the second count charges that the defendants, by means of the conduct complained of, offered and sold securities in violation of 15 U.S.C. § 77a et seq., and used the mails and other instrumentalities of interstate communication in consummating a conspiracy to sell such securities in violation of 15 U.S.C. § 77q.

The third count incorporates the allegations of the two preceding counts by reference, and charges that the acts and omissions of the defendants constituted wilful, intentional, malicious and deliberate fraud, for which punitive damages are sought.

This case is a supplemental effort of plaintiff to that made in his unsuccessful prosecution of an action in which he and other minority stockholders of Hydro-Space sought generally similar relief in the Chancery and Appellate Divisions of the Superior Court of New Jersey, against Hydro-Space, Lithium, their respective presidents, and others not defendants here. See Lippmann v. Hydro-Space Technology, Inc., App.Div.1962, 77 N.J.Super. 497, 187 A.2d 31. The trial court in that case was affirmed in dismissing the complaint upon defendants' motion for the reason that " * * * the complaint, upon any theory, failed to state a claim upon which relief could be granted under the general equity powers of the court."[2] (p. 510, 187 A.2d p. 38).

2. The substance of the allegations in the New Jersey case is tersely and comprehensively summarized by Judge Goldmann, speaking for the Appellate Division, at pp. 500–501 of his opinion, p. 33 of 187 A.2d:

"Lippmann, a recently discharged employee of defendant Hydro-Space Technology, Inc., joined by six others, instituted the present stockholders' action. Collectively they own less than 7/10ths of 1% of the issued and outstanding stock of Hydro-Space. The complaint, by counsel's own admission a very loosely drawn pleading, sought the appointment of a custodial receiver *pendente lite*, and eventually a permanent receiver for Hydro-Space. It charges at some length and with considerable repetition—but in entirely conclusory terms and without particulars—that defendant Lithium Corpora-

The same attorneys who appeared for the plaintiffs in the New Jersey State court action presently appear for the plaintiff in the action in this court. In the former suit the plaintiffs were several minority stockholders of Hydro-Space. In the present action the plaintiff, a single stockholder of the same corporation, admittedly owning less than 7/10ths of 1% of its stock, sues alone. The present plaintiff conceded, during the oral argument of and in his brief in opposition to the motions attacking the complaint, that he brings this action *not* in a representative capacity, but seeks damages and other relief *for his own account* and by reason of alleged wrongdoing chargeable to the defendants or some of them, from which he claims to have suffered damage as a minority stockholder of Hydro-Space.

The defendants in the action before me have moved for dismissal of the complaint. The defendants Lithium and its president move to dismiss under F.R. Civ.P. 12 upon the asserted ground that the complaint fails to state a claim upon which relief can be granted in that (a) the complaint seeks to enforce a secondary right, on the part of a corporate stockholder, but fails to comply with the requirements of F.R.Civ.P. 23, (b) the charges of fraud and other wrongdoing made in the complaint are vague and conclusory and stated with insufficient particularity, (c) the complaint fails to allege that the plaintiff owns 10% of the stock of Hydro-Space as required by N.J.S.A. 14:14-3 and fails to allege the statutory insolvency of the corporation required to justify relief under N.J.S.A. 14:14-2, (d) no facts are set forth warranting the appointment of a receiver, (e) the complaint fails to allege facts stating a primary cause of action to which the appointment of a receiver might be appropriately ancillary, (f) the

complaint fails to state a statutory cause of action under the provisions of any Federal or State law.

The remaining defendants (with the single exception of the president of Hydro-Space who, although served with summons, has merely entered an appearance in the current action) have adopted the grounds urged by Lithium and its president upon their motion to dismiss, and additionally contend that the complaint should be dismissed for improper venue, and for laches, and, in the alternative, that the defendant Hydro-Space is entitled to security for costs and expenses as provided by N.J.S.A. 14:3-15.

The foregoing motions were duly briefed on behalf of plaintiff and all moving parties and argued orally before this Court on October 26, 1964. At the conclusion of the oral argument, the Court reserved decision. This opinion embodies the Court's decision upon the motions.

■ We first consider the contentions of all moving defendants, under F.R. Civ.P. 12(b), that the complaint fails to state a claim upon which relief can be granted; bearing in mind that a complaint should not be dismissed for that reason unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, Hughes v. Local No. 11 of International Ass'n of Bridge, etc. Workers, 3 Cir. 1961, 287 F.2d 810, 814, cert. den. 1961, 368 U.S. 829, 82 S. Ct. 51, 7 L.Ed.2d 32.

As described above, plaintiff's complaint in substance alleges the following: (1) the sale to plaintiff of stock by means of a fraudulent prospectus in July, 1961; (2) mismanagement of Hydro-Space for the benefit of Lithium in breach of fiduciary duties to minority stockholders; (3) deceit in the presentation of false and perjurious affidavits to the New Jer-

tion, Inc., has through its officers 'dominated' Hydro-Space and its board of directors and officers; that the company has been operated at a loss, for Lithium's benefit; that Hydro-Space issued a misleading stock prospectus

and a misleading advertising brochure; that its affairs have been mismanaged and its assets wasted and misapplied, and that the company is not carrying out the purpose for which it was organized."

sey courts to obtain and sustain a dismissal of that litigation as part of a conspiracy by all defendants to siphon off Hydro-Space's assets for their benefit, which was successfully accomplished by the sale of assets to Imperial in exchange for its stock which was distributed to Hydro-Space's shareholders [the first count]; (4) the same conduct alleged in (1) through (3) above constituted violations of 15 U.S.C. § 77a et seq. [the second count];[3] and (5) all of the foregoing conduct was done wilfully and maliciously, justifying claim for punitive as well as compensatory damages [the third count].

With respect to the above-enumerated parts (1) and (2) of the complaint, they are the same allegations which were made in the New Jersey litigation which was dismissed for failure to state a claim on which relief could be granted (see footnote 2, supra). Parts (1) and (2) allege that plaintiff bought his stock as a result of a fraudulent prospectus in July, 1961, and that Hydro-Space was managed for the benefit of Lithium in breach of fiduciary duties owed to minority stockholders, at the time when Lithium was the majority stockholder of Hydro-Space.

In the New Jersey action, in support of its motion to dismiss the complaint, Hydro-Space submitted, in March 1962, an affidavit by its president, N. David Fulton (also a defendant here). Fulton's affidavit stated, *inter alia*, that in May of 1961 Lithium acquired all of the issued and outstanding stock of Hydro-Space in exchange for certain assets. Subsequently, pursuant to a prospectus dated July 19, 1961, a public offering was made of 300,000 shares of Hydro-Space common, of which 145,000 shares were offered by Lithium as a selling stockholder, and 155,000 shares were offered by Hydro-Space as an original issue. The prospectus that Lithium would own 57.4% of the outstanding stock of Hydro-Space. On the date of Fulton's affidavit there were issued and outstanding 705,000 shares of the common stock of Hydro-Space, of which Lithium was the holder of 405,000 shares, constituting the 57.4% above stated. The stock ownership of the plaintiffs in the New Jersey action aggregated 4,900 shares, representing less than 7/10ths of 1% of the issued and outstanding stock of Hydro-Space. The affidavit of Fulton further stated that Hydro-Space was and had at all times since its incorporation been completely solvent. As of December 31, 1961, it had total current assets of $803,174.00 and total current liabilities of $47,026.00, a ratio of assets to liabilities of 17 to 1.

Attached to the Fulton affidavit was a copy of the audit report of the company as of December 31, 1961, certified by the company's accountants. Fulton stated (March 7, 1962) that there had been no substantial change in the financial position of the company since the date of the audit report. The statement of earnings for the period April 1, to December 31, 1961, disclosed total net sales of $661,605.00. Fulton expressed his belief that the corporate operations could not be conducted at a substantial profit, in view of current expenditures for research, until the sales volume reached approximately $1,000,000 per year. He denied that Hydro-Space was insolvent, that it had suspended its ordinary business for want of funds to carry on the same, and that its business had been and was being conducted at a great loss prejudicial to the interests of its creditors and stockholders. The affidavit specifically and in great detail denied each of the conclusory allegations of the (New Jersey) complaint.

---

3. On the oral argument of the pending motions, plaintiff's attorney summarized the first count as stating a claim " * * * for mismanagement of the corporation, breach of fiduciary relationships, conflict of interest on the part of dominant management and stockholders. In addition to that, I think that there is an area of deceit on [*sic*] the terms of the affidavits." He also mentioned the Federal claim under 15 U.S.C. § 77q.

Accompanying the affidavit of Fulton was that of Harry D. Feltenstein, Jr., a defendant in the New Jersey action (and in that here) and a director, chairman of the board and financial vice-president of Hydro-Space, as well as a director, president and treasurer of Lithium. His affidavit corroborates that of Fulton, and, with respect to charges in the complaint against Feltenstein, he specifically denied them.

In that same action the plaintiff submitted an affidavit in reply to those of Fulton and Feltenstein in which he attacked the credibility of his adversary affiants and criticized the conclusions drawn from the corporate financial statement referred to in the Fulton affidavit. More specifically, plaintiff stated that the sum of $803,174.00, represented as total corporate assets of Hydro-Space as of December 31, 1961, was grossly inflated and that Fulton's use of this figure in that connection was false. (On oral argument in opposition to the present motions plaintiff's attorney stated that he did not dispute that figure.) Lippmann now says that the reported total net sales during the period April 1, 1961 to December 31, 1961 was misleading because the inclusion of $40,000.00 as a non-recurring profit reflected sales of a prior period attributable to Fulton-Irgon Corporation and/or Fulton-Irgon Division of Lithium (predecessor of Hydro-Space). He charges that, with the object of giving a false impression of its affairs, Hydro-Space shipped an excess of products in December 1961 in order to create a substantial amount of billings prior to the close of business for the year. He charges further that the amount of working capital set forth in the financial statement was grossly exaggerated, and that an independent accounting and audit would disclose its falsity. He stated, as of his own knowledge, that the Hydro-Space assets listed were exaggerated to several times their actual worth, and that this over-valuation was made to create a misleading picture of the true corporate condition. He accuses Fulton of misleading the New Jersey court in

referring to Hydro-Space as a new corporation, and asserts that it came into existence four or five years earlier as Fulton-Irgon Corporation, and had continued in substantially the same form to the time of plaintiff's affidavit in the case. Plaintiff cites Fulton's statement that sales were unfavorable, and his actions in discharging salesmen and laying off personnel, as direct refutation of Fulton's representations of the sales for the audit period. He charges that if the representation that the assets of Hydro-Space amounted to $450,000.00 was true, that amount consisted of the proceeds of sale of stock; but he insists that the company was steadily and rapidly deteriorating and approaching insolvency. With respect to the operating relationship between Hydro-Space and Lithium, plaintiff stated that Hydro-Space had a research contract with Lithium, the provisions of which were all for Lithium's benefit, and that pursuant thereto Hydro-Space billed Lithium for the work done. Lithium, however, decided how much to pay to Hydro-Space, and determined what formula was to be used. Instances of these operational interrelationships were then detailed in the plaintiff's affidavit in the New Jersey court action.

With respect to the statement in Fulton's affidavit that only a small portion of the business of Hydro-Space had been with Lithium, and that of the total sales from April 1 to December 31, 1961 only $52,562.00 was attributable to sales to Lithium, plaintiff replied in his affidavit that if these allegations were true, they were true only for the period stated, subsequent to which the situation had changed materially and more and more of Hydro-Space business had been done for Lithium. Plaintiff emphasized that Hydro-Space was subservient to Lithium and that Fulton, as president of Hydro-Space, took orders from Feltenstein, president of Lithium. Plaintiff charged in his affidavit that the representations made respecting Hydro-Space in the prospectus of July 19, 1961, regarding its financial condition and capacity and ability to exercise its powers, were intended

to mislead the Court and, among other things, that several directors of Hydro-Space gave no attention to its operations, ignored complaints of its stockholders and key employees, and acted primarily, if not exclusively, in the interests of Lithium. In plaintiff's own language, " * * * as Lithium controls a majority of stock, it, of course, can elect a board of directors subservient to it and it is apparent that independent directors will not and cannot be elected." Plaintiff's affidavit also attacked that of Feltenstein, and in sum charged Feltenstein with being the sole dominating figure of Hydro-Space.

Thus the New Jersey trial court was called upon to resolve the factual issues presented by the statements of Fulton and Feltenstein on the one hand, and those of Lippmann on the other. These issues were resolved against Lippmann, and by its order of March 23, 1962, in the New Jersey trial court, Lippmann's complaint was dismissed and judgment was entered in favor of Hydro-Space, Fulton, Feltenstein and Lithium, with costs. From this dismissal and judgment the plaintiff appealed to the Appellate Division, which affirmed the same.

■ The decisions of the New Jersey trial and appellate courts upon the allegations of what are now parts (1) and (2) of the present complaint, was upon the merits of those claims, and they are res judicata, even though the decision was upon a motion to dismiss for failure to state a claim, Rhodes v. Meyer, 8 Cir. 1964, 334 F.2d 709, 716. Therefore, plaintiff is barred from retrying the merits of parts (1) and (2) of his present complaint, and defendants' motion to dismiss must be granted at least as to those parts.

Part (3) of the above-summarized present complaint alleges that all of the present defendants conspired to defraud the New Jersey courts by the presentation of false and perjurious affidavits to those courts, and that they relied thereon in dismissing plaintiff's action. This is charged to have been part of the alleged conspiracy to defraud plaintiff (and other minority stockholders) by siphoning off Hydro-Space's assets.

The allegedly false affidavits were those of Fulton and Feltenstein (referred to supra) supplied to the New Jersey trial court in March, 1962 and an affidavit of Feltenstein submitted to the Appellate Division in November, 1962 in opposition to plaintiff's motion to supplement the appellate record (which motion was denied). The criticized portion of Fulton's affidavit (corroborated by Feltenstein's first affidavit) declares as accurate a December 1961 audit, showing the ratio of assets to liabilities of Hydro-Space as 17 to 1, and states there had been no substantial change up to the time of the affidavit. Fulton declared further that Hydro-Space's sales for that period were favorable, but had not yet reached the level at which substantial profits could be obtained. He further denied the company was insolvent and that its business was being conducted at a great loss or prejudically to its stockholders' interests. Feltenstein's later affidavit declared that Hydro-Space's condition, as of an October 1962 unaudited balance, showed an assets-liabilities ratio of 12 to 1, with stockholders' equity at over $846,000 (as compared with over $999,000 in December, 1961).

Plaintiff asserts that these affidavits were false and perjurious, in "open contempt" of the State courts, in that they represented that the financial affairs of Hydro-Space were in eminently satisfactory condition, while such statements were totally inconsistent with the curtailment of the company's business and the steps to liquidate the affairs and assets of the company, and were therefore a knowing concealment of the true state of affairs of the company. Plaintiff claims that further eviednce of the falsity of the affidavits is to be found in disclosures made in a notice of a special meeting of stockholders of Hydro-Space, dated April 19, 1963, signed by Mc-Laughlin, as president, which stated that during the summer of 1962 (while the case was pending in the New Jersey

courts) the business of Hydro-Space was operating at a loss, was substantially curtailed, and that its organization had been gradually disbanded for business reasons. The same notice further stated that, by the end of 1962 (when the decision of the Appellate Division was rendered) Hydro-Space had ceased operations and its management was seeking other business opportunities. Plaintiff quotes from the decision of the Appellate Division that there was no abuse of judicial discretion on the part of the Chancery Division in refusing permission to amend the complaint in the face of the motions of the defendants to dismiss. Plaintiff here argues that the "circumstances" referred to by the Appellate Division in affirming the refusal of leave to amend were the representations in the affidavits and briefs submitted to the reviewing court which tended to disclose that the assets of Hydro-Space were ample, had indeed increased since the organization of the corporation, and that the company had not suffered the great loss which the plaintiffs alleged in their complaint in that case. Plaintiff presently argues that " * * * if the true state of affairs had, in fact, been disclosed to the Appellate Division, either in connection with plaintiffs' motion of November 30, 1962 for leave to supplement the record, or on the main appeal, the Appellate Division would not have taken the position in its opinion that 'the relief sought was based on nothing more than vague and general allegations which amounted to mere conclusions.' "

■ It is the plaintiff's contention here that this Court has power to grant relief to him from the judgment of the New Jersey courts because of a material non-disclosure before that court, which amounted to fraud, and that because this Court has the power to grant relief by reason of its diversity jurisdiction, this Court is a proper forum to review the judgment of the State court, which, he says, resulted from " * * * the failure to disclose the true facts as to Hydro-Space's business losses to the Appellate Division" of the New Jersey Superior Court. The authorities cited by the plaintiff for the contention which he makes do not support him therein.

In Griffith v. Bank of New York, 2 Cir. 1945, 147 F.2d 899, 160 A.L.R. 1340, cert. den. 1945, 325 U.S. 874, 65 S.Ct. 1414, 89 L.Ed. 1992, relied upon by the plaintiff here, the opinion states, at p. 901 of 147 F.2d that " * * * the federal courts may exercise their equity powers so as to set aside, enjoin enforcement of, or ignore a state court judgment obtained by fraud. Marshall v. Holmes, 141 U.S. 589 [12 S.Ct. 62, 35 L.Ed. 870] * *. And though it was once thought necessary that such fraud be 'extrinsic,' so that it could not have been considered in the original action, United States v. Throckmorton, 98 U.S. 61 [25 L.Ed. 93]. * * *, the later cases no longer seem to adhere strictly to even this limitation." Citing *inter alia* Publicker v. Shallcross, 3 Cir. 1939, 106 F.2d 949, 126 A.L.R. 386, cert. den. 1940, 308 U.S. 624, 60 S.Ct. 379, 84 L.Ed. 521. In Publicker, the Third Circuit followed Marshall v. Holmes in holding that a Federal court in the exercise of its equity powers, and where diverse citizenship gives jurisdiction over the parties, may deprive a party of the benefit of a judgment fraudulently obtained by him in a State court if the circumstances are such as would authorize relief by the Federal court if the judgment had been rendered by it and not by a State court. The distinction between Publicker and Marshall, on the one hand, and the case at bar on the other, is pointed up in a quotation at pp. 597–598 of 141 U.S., p. 64 of 12 S.Ct. of Marshall (from the opinion in Barrow v. Hunton, 99 U.S. 80, 82–83, 25 L.Ed. 407):

" ' * * * [I]f the proceeding is merely tantamount to the common-law practice of moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review or an appeal, it would belong to the latter category [a supplementary proceeding so connected with the original suit as to form an incident to it, and to be substantially a continuation of it], and the United

States courts could not properly entertain jurisdiction of the case. Otherwise, the Circuit Courts of the United States would become invested with power to control the proceedings in the state courts, or would have appellate jurisdiction over them in all cases where the parties are citizens of different States. Such a result would be totally inadmissible.

" 'On the other hand, if the proceedings are tantamount to a bill in equity to set aside a decree for fraud in the obtaining thereof, then they constitute an original and independent proceeding, and according to the doctrine laid down in Gaines v. Fuentes, 92 U.S. 10 [23 L.Ed. 524], the case might be within the cognizance of the federal courts. The distinction between the two classes of cases may be somewhat nice, but it may be affirmed to exist. In the one class there would be a mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees of the state courts; and in the other class, the investigation of a new case, arising upon new facts, although having relation to the validity of an actual judgment or decree, or of the party's right to claim any benefit by reason thereof.' "

Assuming that the Marshall doctrine that a Federal court has jurisdiction to set aside, enjoin enforcement of or ignore a State court judgment obtained by fraud, is still good law under 28 U.S.C. § 2283,[4] the plaintiff has failed to bring his action here within the limitation of the Marshall doctrine as outlined in the foregoing quotation from that opinion. What the plaintiff in the present action is attempting to do is to attack the credibility of the evidence before the New Jersey court and to overrule the inferences of the latter tribunal drawn from its acceptance of that evidence. This Court has no jurisdiction to entertain an appeal from or otherwise to review the decision of an appellate court of a State. That portion of plaintiff's argument in his brief in opposition to the present motions discloses commendable research, but is entirely irrelevant to the apparent contention of the plaintiff that *this* Court may or should correct or punish an alleged fraud committed upon a State court. See Rippe v. Stahlhuth, 8 Cir. 1951, 192 F.2d 952, cert. den. 1952, 342 U.S. 956, 72 S.Ct. 630, 96 L.Ed. 710.

Even if part (3), ante, of plaintiff's complaint be construed as alleging an independent action for fraud, not an action to vacate or enjoin enforcement of the State court judgments, Alleghany Corp. v. Kirby, D.C.N.Y.1963, 218 F.Supp. 164, 169, the allegations thereof are still deficient. Even if we accept as true the plaintiff's allegation that the affidavits in the New Jersey action were false,[5] plaintiff merely charges therein

---

4. The Marshall doctrine was criticized as "very doubtful" in Toucey v. New York Life Ins. Co., 1941, 314 U.S. 118, 136, 62 S.Ct. 139, 86 L.Ed. 100. As to whether the revision of the statute in 1948, resulting in the present § 2283, confirmed the invalidity of the Marshall doctrine is unclear. See Wright on Federal Courts (1963) § 47 pp. 152–156. The Marshall doctrine was held to be overruled in Collins v. Laclede Gas Co., 8 Cir., 1956, 237 F.2d 633, and in Warriner v. Fink, 5 Cir. 1962, 307 F.2d 933, cert. den. 1963, 372 U.S. 943, 83 S.Ct. 937, 9 L.Ed.2d 969 (holding that a Federal court had no jurisdiction, under § 2283, to enjoin enforcement of a foreclosure decree obtained by means of a fraudulent stipulation between counsel). And see Jos. L. Muscarelle, Inc. v. Central Iron Mfg. Co., 3 Cir. 1964, 328 F.2d 791, 793 holding that a Federal injunction against enforcement of a State judgment is prohibited by § 2283 unless within its explicit exceptions.

5. Plaintiff claims the affidavits that the company was in good condition were totally inconsistent with the curtailment of Hydro-Space's business and the steps taken to liquidate the company in the summer of 1962. However, the Feltenstein affidavit, filed in the New Jersey Appellate Division in November, 1962, states, in response to an allegation in an affidavit

that he and others were induced to buy stock in Hydro-Space by fraud (unparticularized) on the part of the officers and directors of Hydro-Space, Imperial '400', Four Hundred Construction and Lithium. He says that Lithium, Fulton and Feltenstein offered Hydro-Space stock to plaintiff and other minority stockholders through misrepresentations (unspecified) in a prospectus dated July 19, 1961 (long prior to his commencement of suit in the New Jersey court on February 9, 1962) offering 42.6% of Hydro-Space stock to the public. Plaintiff alleges that he relied on the representations in that prospectus to his damage and brought a stockholders' suit in the Superior Court of New Jersey. He says that that action was dismissed because of false statements made by Fulton and Feltenstein to the New Jersey courts in their respective affidavits submitted in that action. He charges that all the defendants conspired to obtain Hydro-Space assets worth $616,906.00, in contempt of the New Jersey court, by advising Hydro-Space stockholders in the notice of special meeting thereof dated April 19, 1963, that Hydro-Space could not be operated successfully and that it was in the corporation's best interests to sell its assets to Imperial '400', although such advice was contrary to the representations previously made to the New Jersey court in the Fulton and Feltenstein affidavits. Plaintiff further alleges that following that deception of the New Jersey court, the Hydro-Space assets were sold in exchange for Imperial stock, which was distributed to Hydro-Space stockholders, and Hydro-Space was then dissolved to the damage of the plaintiff, Hydro-Space and its minority stockholders. Plaintiff concedes that the sale of the Hydro-

Space assets was duly approved by its stockholders.

The process by which and the extent to which the plaintiff has suffered damage from the events alleged is not disclosed. In fact, in an affidavit submitted in the present action by John S. Dorf, one of the present defendants, the following uncontroverted allegations are made:

"Pursuant to a Reorganization Agreement and Plan adopted by the Hydro-Space stockholders [in April, 1963] and providing for the complete dissolution and liquidation of Hydro-Space, almost all of the 180,-167 shares of Imperial's common stock received by Hydro-Space were then distributed to the Hydro-Space stockholders in exchange for and in cancellation of the shares of Hydro-Space owned by them (upon the basis of one share of Imperial's stock for every 3.913 shares of Hydro-Space stock). Hydro-Space then completed its dissolution by filing a Certificate of Dissolution in the Office of the Secretary of State of Delaware on May 8, 1963. The shares of Imperial's stock received by Hydro-Space and distributed to its stockholders, other than the shares distributed to Four Hundred, [the majority stockholder] immediately became tradeable in the over-the-counter market. * * * The total par value of * * * [plaintiff's] 4,000 shares is less than %₀ths of 1% of the aggregate par value of the 705,000 shares of Hydro-Space's stock which were exchangeable for Imperial's stock. Had plaintiff exchanged his 4,000 shares for Imperial's stock, he would have re-

by plaintiff that Feltenstein was engaged in secret negotiations to sell Lithium's majority stock interest:

"While from time to time Lithium has had discussions with persons interested in buying its controlling interest in

Hydro-Space, the Board of Directors of Hydro-Space has been apprised of such discussions. Should Lithium sell its shares, it would no longer be the controlling stockholder of Hydro-Space."

ceived approximately 1,022 shares (of Imperial), which shares would have had an aggregate market value on September 4, 1964, the date of the commencement of this action, of $3,066.00 (computed by taking the mean between the highest bid price and lowest asked price on September 4, 1964, as reported by the National Daily Quotation Service)."

In summary, plaintiff has failed in part (3) of the complaint to allege either a basis for the vacating of the New Jersey courts' dismissal of his action there, or an independent claim of fraud by which he was damaged. Thus defendants' motion to dismiss the complaint for failure to state a claim must be granted with respect to part (3) of the complaint.

Part (4) of the complaint alleges that the conduct of defendants in its totality violated 15 U.S.C. § 77a et seq., the Securities Act of 1933, giving plaintiff a cause of action under that statute. Since all the civil causes of action provided for by that statute deal exclusively with the offer or sale of securities, the only basis upon which plaintiff could have a claim thereunder was his purchase, in July of 1961, of the 4,000 shares of Hydro-Space stock as a result of the alleged misrepresentation in the prospectus issued at that time.[6] Section 77l provides a civil remedy to anyone who purchased a security as a result of a prospectus including an untrue statement of fact or omission of a material

fact; but § 77m provides that no such action under § 77l shall be brought more than three years after the sale of the securities. Because plaintiff admittedly purchased his 4,000 shares of Hydro-Space in July, 1961, and his complaint was filed here on August 28, 1964, any claim he might have had under 15 U.S.C. § 77a et seq. is barred by the statute of limitations, and defendants' motion to dismiss the complaint on that ground, for failure to state a claim, must be granted in respect to part (4) of the complaint.[7]

Part (5) of the complaint is a claim for punitive damages based on the allegations that the conduct charged in parts (1) through (4) of the complaint was wilful, intentional and malicious. Since parts (1) through (4) are to be dismissed for failure to state a claim, part (5), which depends for its existence on the existence of any or all of the claims in parts (1) through (4), must also be dismissed for the same reason.

Consequently, because parts (1) through (5) of the complaint fail to state a claim on which relief can be granted, the defendants' motion to dismiss the entire complaint for that reason is granted, with costs.

In light of this determination, it is unnecessary to decide the remaining motions of defendants as to improper venue, failure to comply with F.R.Civ.P. 23, and failure to make sufficient allegations to support the appointment of a receiver.

Let an appropriate order be submitted.

6. Plaintiff also asserts a claim under 15 U.S.C. § 77q based on the alleged false affidavits in the New Jersey action and the alleged fraud in the sale of the assets to Imperial for which Hydro-Space stockholders received Imperial stock. Plaintiff, by his own admission, still holds his Hydro-Space stock and therefore has no standing to assert any such claim.

7. For the same reason, part (4) of the complaint states no claim under the New Jersey Uniform Securities Law, R.S. 49:3–19(e), N.J.S.A. which provides that no person may sue under that section, for a sale by means of fraud, more than two years after the contract of sale.